OPINION
{¶ 1} Defendant-appellant, Harold J. Stanley, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of possession of cocaine. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On July 15, 2005, the Franklin County Grand Jury indicted both defendant and Anthony Wayne Williams on one count of possession of cocaine, in violation of R.C. 2925.11, a felony of the first degree. The indictment alleged that the amount of crack cocaine involved was between 25 and 100 grams, and that the violation occurred on October 7, 2004. Defendant pled not guilty as charged in the indictment. On *Page 2 
January 9, 2006, the trial court held a hearing on defendant's motion to suppress the results of the search of the motor vehicle he was driving and on his motion to dismiss. The trial court denied said motions.
 {¶ 3} At trial, two persons testified: defendant and Columbus Police Officer Benjamin Rohaly. Officer Rohaly testified as follows. At approximately 5:30 p.m., on October 7, 2004, Officer Rohaly was in his cruiser patrolling the streets when he ran a random license plate check on a black Buick LeSabre ("LeSabre"). The license plate was registered to a Chevrolet. Consequently, Officer Rohaly initiated a traffic stop on the vehicle. After stopping the vehicle, the officer asked the driver for his license, registration, and proof of insurance. The driver only produced his license. Also in the vehicle was a man, later identified as Anthony Wayne Williams, in the front passenger seat, and another man in the seat behind the driver. Because they were not wearing seat belts, the officer asked those individuals for identification. The officer performed a warrant check on the three individuals. The officer learned that the passenger in the backseat, Mr. Laney, had a possible felony warrant for failure to appear, and the officer requested that another officer assist him.
 {¶ 4} After Officer Fihe arrived at the scene of the stop, and after the warrant was verified, Officers Fihe and Rohaly removed Mr. Laney from the vehicle and placed him under arrest. Upon searching Mr. Laney, the officers discovered a metal "ramrod." Officer Rohaly asked defendant whether he could search the area where Mr. Laney had been sitting in the vehicle and defendant acquiesced. The officer discovered a glass crack pipe on the floorboard where Mr. Laney had been sitting. The officer asked defendant whether there was anything else in the vehicle that he needed to know about, *Page 3 
and defendant indicated that there was not. Defendant indicated that the vehicle belonged to his wife. The officer decided to request a K-9 unit to walk around the vehicle.
 {¶ 5} As he was returning to his cruiser, Officer Rohaly noticed both defendant and Mr. Williams, the front seat passenger, "making furtive movements toward the center console of the vehicle." (Tr. 91.) Upon seeing that, the officer returned to the LeSabre and told defendant and Mr. Williams not to make any more movements and to keep their hands where he could see them.
 {¶ 6} When Officer Rohaly informed defendant that he was going to request a K-9 unit, defendant became somewhat nervous and interested in the capabilities of the K-9 unit. Defendant asked the officer, "[A]re they good?" (Tr. 91.) The officer responded, "[Y]es, very good." Id. After informing defendant that the K-9 unit was "very good," defendant became more nervous, was agitated, and was breathing heavy. The officer walked back to his cruiser and informed Officer Fihe of defendant's interest in the K-9 unit. At that point, the officer observed defendant "reach down again to the center console." Id. Upon witnessing that movement, the officer returned to the LeSabre and told defendant to keep his hands on the wheel. The officer stayed near defendant until the K-9 unit arrived.
 {¶ 7} The K-9 unit walked around the perimeter of the vehicle and the trained dog "gave a positive alert on both door seams" of the vehicle. Id. Thereupon, Officer Fihe removed defendant from the vehicle and Officer Rohaly removed Mr. Williams. Officer Rohaly searched the vehicle and found a beverage cup in the middle of the console. Upon removing the cup's lid, the officer discovered baggies containing a substance, later identified as 34.3 grams of crack cocaine, placed on top of ice. Defendant and Mr. Williams were placed under arrest. The cup that contained the crack cocaine was never *Page 4 
tested for fingerprints. However, according to Officer Rohaly, the chances of obtaining fingerprints off the cup would have been slim to none. At police headquarters, defendant made statements to the police, but Mr. Williams remained silent. Even though both defendant and Mr. Williams were charged with violating R.C. 2925.11, Mr. Williams has not appeared in the matter and there is an outstanding warrant for his arrest.
 {¶ 8} Defendant testified at trial as follows. At approximately 5 p.m., on October 7, 2004, defendant filled out an application to work part-time for the Pepsi Cola Company. After filling out the application, defendant received a call on his cell phone from Mr. Williams, who asked defendant for a ride. Defendant drove to 5th Avenue to pick up Mr. Williams. While en route, defendant noticed a police cruiser pass him going in the opposite direction. The cruiser turned around into defendant's direction. Defendant stopped at a store to pick up Mr. Williams. At the store, Mr. Williams held a beverage cup, which he gave to Mr. Laney, whom defendant did not know. Mr. Laney had the cup when the two entered the LeSabre.
 {¶ 9} After defendant picked up Mr. Williams and Mr. Laney, Officer Rohaly turned on his cruiser's siren and stopped them. The officer asked defendant for his identification and proof of insurance. Defendant gave his identification to the officer, but he could not find his proof of insurance. The officer returned to his cruiser and checked defendant's license. The officer returned to the LeSabre and asked Mr. Williams and Mr. Laney for their identification, and he went to his cruiser to check them. Mr. Laney indicated to defendant and Mr. Williams that there was a warrant for his arrest, and he passed the cup to the front seat because he said he was going to jail. Mr. Williams placed the cup on the console between him and defendant. Defendant denied that he lifted the lid off the cup, put anything in the cup, saw Mr. Williams put anything in the cup, *Page 5 
or helped him put anything in the cup. According to defendant's testimony, his movement that was described by the testifying officer as "furtive," was actually movement relating to his effort to find a ticket he received days earlier for expired license plates. It took him two to three minutes to find the ticket, and when he showed it to the officer, the officer was not persuaded by his explanation for why the license plates did not match the vehicle. After Officer Rohaly told defendant that he requested a K-9 unit, defendant asked the officer whether the dogs were good. Defendant explained that he asked that question because he was "[j]ust making conversation." (Tr. 150.)
 {¶ 10} The jury found defendant guilty of possession of cocaine, as charged in the indictment. The trial court sentenced defendant to five years in prison and suspended his driver's license for five years. The trial court entered its judgment on March 7, 2006.
 {¶ 11} Defendant timely appeals to this court from that judgment and sets forth the following two assignments of error for our review:
 FIRST ASSIGNMENT OF ERROR
 The trial court erred in failing to suppress evidence taken in an unlawful seizure. This decision violated the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution.
 SECOND ASSIGNMENT OF ERROR
 There was insufficient evidence to support Appellant's conviction and the verdict was against the manifest weight of the evidence.
 {¶ 12} By his first assignment of error, defendant argues that the trial court erred in not granting his motion to suppress evidence taken in a warrantless search of his vehicle. Defendant contends that the search of his vehicle was unconstitutional because his *Page 6 
detention continued beyond the reasonable period of time and because the positive alert by the drug detection dog did not provide probable cause to search defendant's vehicle.
 {¶ 13} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Section 14, Article I, of the Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. The language of Section 14, Article I, of the Ohio Constitution and the Fourth Amendment to the United States Constitution are coextensive and provide the same protections. State v.Robinette, 80 Ohio St.3d 234, 238-239, 1997-Ohio-343. "`[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable.' "Wilson v. Arkansas (1995), 514 U.S. 927, 931,115 S.Ct. 1914, quoting New Jersey v. T.L.O. (1985), 469 U.S. 325, 327,105 S.Ct. 733. "Warrantless searches are generally considered unreasonable. * * * Accordingly, evidence obtained by means of a warrantless search is subject to exclusion, unless the circumstances of the search establish it as constitutionally reasonable." (Citations omitted.) AL Post 763 v.Ohio Liquor Control Comm., 82 Ohio St.3d 108, 111, 1998-Ohio-367.
 {¶ 14} Defendant does not challenge the lawfulness of the officer's decision to stop him to investigate the traffic law violation.[1]
However, defendant argues that the officer continued to detain him beyond the time the justification for the traffic stop had ended.
 {¶ 15} In United States v. Jacobsen (1984), 466 U.S. 109, 124,104 S.Ct. 1652, the United States Supreme Court held that "a seizure lawful at its inception can *Page 7 
nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by theFourth Amendment's prohibition on `unreasonable searches.' "."A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes
(2005), 543 U.S. 405, 408, 125 S.Ct. 834. An investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer (1983), 460 U.S. 491, 500,103 S.Ct. 1319. However, "[i]f during the initial detention * * * the officer ascertained reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." Robinette, supra, at 241.
 {¶ 16} In Robinette, at paragraph one of the syllabus, the Supreme Court of Ohio held:
 When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.
 {¶ 17} The recent Supreme Court of Ohio decision in Blue Ash v.Kavanagh, 113 Ohio St.3d 67, 2007-Ohio-1103, is also instructive here. In Kavanagh, the defendant was pulled over for driving with expired license plates. The defendant had an expired driver's license and exhibited signs of nervousness to the officer. Applying his discretion, the police officer decided to impound the defendant's vehicle because defendant could not lawfully drive the vehicle away and because the vehicle could not be parked in a safe *Page 8 
location on the freeway. The officer returned to his cruiser, requested backup, and began writing a citation. The officer asked the defendant to exit the vehicle and whether there was any marijuana in the vehicle. The question regarding marijuana seemed to make the defendant more nervous. The backup officer arrived, and the other officer deployed his narcotics-detection dog. The dog gave a positive alert on the door handles of the vehicle. On that basis, the officer indicated he was going to search the vehicle. The defendant indicated that there was a gun in the center console, and the officer retrieved the loaded weapon. The defendant was cited for violating the traffic law and placed under arrest for improperly handling a firearm in a motor vehicle, in violation of a Blue Ash ordinance. The defendant moved to have the results of the search suppressed, and the trial court denied the motion. The defendant pleaded no contest to the firearm charge and was found guilty by the trial court. See id. at ¶ 2-6.
 {¶ 18} Under the facts of that case, the Supreme Court of Ohio found "that the deployment of the narcotics-detection dog * * * did not prolong the seizure beyond the time reasonably required to complete the original mission of citing the defendant for driving with expired license plates." Id. at ¶ 24. The court held that the officer "lawfully impounded [the defendant's] vehicle during a lawful traffic stop, and the deployment of the narcotics-detection dog while awaiting impoundment did not prolong the seizure beyond the time reasonably required to complete the citation." Id. at ¶ 30. See, also, State v. Batchili,113 Ohio St.3d 403, 2007-Ohio-2204 (analyzing the constitutionality of a prolonged traffic stop involving background checks, facts giving rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop, and a drug dog alert on the vehicle). *Page 9 
 {¶ 19} Defendant argues that there was no reasonable basis to justify his continued detention beyond the time necessary to give him his traffic ticket. We disagree. Based on the circumstances of this case, we find that it was reasonable for the officer to extend the duration of the detention beyond the time reasonably required for a routine traffic stop. Officer Rohaly stopped the defendant because the license plates did not match the vehicle. Upon request, defendant provided his driver's license, but he did not provide his vehicle registration or his insurance. Additionally, because the passengers in the vehicle were not wearing seat belts, Officer Rohaly asked them for identification, which they provided. At the suppression hearing, Officer Rohaly testified that the normal time for writing a license plate violation is eight to ten minutes and that it took five minutes to do a record check on the three individuals. However, in this case, it was necessary for the officer to wait for verification of a felony warrant for the passenger's arrest, which took an additional 20 to 30 minutes. As to that delay, we find that it was not unreasonable for the officer not to allow the driver of the vehicle to drive away when a passenger of the vehicle had a possible felony warrant for his arrest, and the officer needed time to verify that warrant.
 {¶ 20} After verification of the warrant, the officer arrested Mr. Laney and found a "ramrod" on his person. The officer requested to search the backseat area of the vehicle, and defendant acquiesced. In his search of that area, the officer discovered a glass crack pipe. Based on the suspicion raised by the discovery of the drug paraphernalia, the officer decided to request a K-9 unit to walk around the vehicle. Clearly, the presence of the drug paraphernalia provided the reasonable suspicion that the vehicle contained illegal drugs, thereby justifying the extension of the duration of the detention. Based on *Page 10 
the foregoing, we conclude that the duration of the seizure was reasonable and did not violate the United States or Ohio Constitutions.
 {¶ 21} Under his first assignment of error, defendant also argues that the drug-detection dog did not provide probable cause for the search of the vehicle. More specifically, defendant contends that the positive alert of the dog did not provide probable cause to search the vehicle considering the officer had removed a crack pipe from the rear floorboard shortly before the arrival of the dog and the absence of "more detailed explanation of the dog's reactions and abilities." (Defendant's brief, at 9.)
 {¶ 22} It is well-settled that "[t]here is probable cause to justify a warrantless search of a vehicle once a properly trained and reliable drug detection dog alerts positively to the presence of drugs."United States v. Perez (C.A.6, 2006), 440 F.3d 363, 374, citingUnited States v. Hill (C.A.6, 1999), 195 F.3d 258, 273; see, also,Kavanagh, at ¶ 26 ("When the dog alerted to the vehicle's door handles, it gave [the officer] probable cause to search the vehicle.").
 {¶ 23} In this appeal, defendant sets forth various arguments regarding the accuracy and/or reliability of the drug-detection dog's positive alert to the presence of drugs. For example, defendant argues that there was insufficient evidence that the dog was "properly" trained and "certified" and that the dog "had a history of reliably identifying the odor of drugs." (Defendant's brief, at 20.) Defendant argues that the drug-detection dog's reaction to the vehicle was arbitrary. These arguments are unavailing in this appeal.
 {¶ 24} "[T]he state has the burden of going forward with evidence to show probable cause once the defendant has demonstrated a warrantless search or seizure and has raised lack of probable cause as a ground for attacking the legality of the search *Page 11 
or seizure." Xenia v. Wallace (1988), 37 Ohio St.3d 216, 218. However, "the prosecutor cannot be expected to anticipate the specific legal and factual grounds upon which the defendant challenges the legality of a warrantless search." Id. at 218. The court in Wallace found that Crim.R. 47 "requires that the prosecution be given notice of the specific legal and factual grounds upon which the validity of the search and seizure is challenged." Id. at 219. The court further noted that the rule is not solely for the benefit of the prosecution, but also serves to permit the trial court to prepare for a hearing. "[T]he court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits." Id. Therefore, the court placed the burden upon the defendant in a criminal case to "make clear the grounds upon which he [or she] challenges the submission of evidence pursuant to a warrantless search." Id. Consequently, the "[f]ailure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal." Id.
 {¶ 25} In his motion to suppress, defendant did not challenge the accuracy or reliability of the drug-detection dog that sniffed the vehicle. Accordingly, we find that defendant's arguments regarding the accuracy and reliability of the dog are waived for purposes of appeal. See State v. Bennett, Cuyahoga App. No. 86962, 2006-Ohio-4274 (finding that the defendant, who did not challenge the reliability of the dog or whether it alerted, waived these arguments for purposes of appeal).
 {¶ 26} For the above reasons, we overrule defendant's first assignment of error.
 {¶ 27} Defendant alleges in his second assignment of error that there was insufficient evidence to support his conviction for possession of cocaine and that the conviction was against the manifest weight of the evidence. *Page 12 
 {¶ 28} In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 29} When assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "Id. at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Furthermore, "`[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' "Thompkins, at 387.
 {¶ 30} In the case at bar, defendant was convicted of violating R.C.2925.11, which provides that no person shall knowingly obtain, possess, or use a controlled substance. For purposes of R.C. Chapter 2925, "possess" or "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or *Page 13 
substance is found." R.C. 2925.01 (K). Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 31} "Absent an admission by defendant, the surrounding facts and circumstances, including defendant's action, determine whether defendant knowingly possessed cocaine." State v. Baker, Franklin App. No. 02AP-627, 2003-Ohio-633, at ¶ 23. Possession of a controlled substance may be actual or constructive. See, e.g., State v. Burnett, Franklin App. No. 02AP-863, 2003-Ohio-1787, at ¶ 19. "A person has actual possession of an item when it is within his immediate physical control. * * * Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." (Citations omitted.) The mere presence of an individual in the vicinity of illegal drugs is insufficient to establish the element of possession. State v.Chandler (Aug. 9, 1994), Franklin App. No. 94AP-172. However, this court has also stated that "[t]he discovery of readily accessible drugs in close proximity to a person constitutes circumstantial evidence that the person was in constructive possession of the drugs." Burnett, supra, at ¶ 20. "`All that is required for constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them.' "Id., citing In re Farr (Nov. 9, 1993), Franklin App. No. 93AP-201. Simply stated, "[constructive possession can be inferred from a totality of the evidence where sufficient evidence, in addition to proximity, supports dominion or control over the contraband." State v.Norman, Franklin App. No. 03AP-298, citing State v. Johnson (July 11, 1990), Summit App. No. 14371. *Page 14 
 {¶ 32} In this appeal, defendant argues that the evidence supporting the charge of possession of cocaine was limited and that his actions were consistent with a person who is innocent. Defendant asserts that, even though he observed the officer turn around in his direction, he did not attempt to dispose of the drugs or evade the police. Defendant also notes that he waived his rights by speaking to investigators after his arrest, that he informed the prosecutor's office when he moved, and that he did not avoid trial by fleeing. Defendant asserts that the testifying officer's observation regarding defendant's "furtive movements" carries minimal weight, because, according to defendant, his comments "vaguely described" defendant's movements. We find defendant's arguments to be unpersuasive.
 {¶ 33} Contrary to defendant's arguments, we find that the evidence in this case was legally sufficient to support defendant's conviction for possession of cocaine and that his conviction was not against the manifest weight of the evidence. The circumstantial evidence in this case supported a finding that defendant knowingly possessed the crack cocaine found in the vehicle. After obtaining identification information from defendant, Officer Rohaly observed defendant and Mr. Williams simultaneously make "furtive" movements toward the center console, where the crack cocaine was later discovered in a cup. Even after the officer told defendant to keep his hands on the steering wheel, defendant was again observed reaching toward the center console. The officer's testimony regarding his observations as to defendant's actions reasonably indicated defendant's knowledge regarding the contents of the cup, even though the officer did not observe defendant handle the cup. In addition, although the officer did not extensively elaborate regarding the movements he observed, he descriptively characterized the movements as "furtive." Thus, a reasonable person could view his testimony as *Page 15 
indicating that defendant was attempting to make movements without those movements being observed.
 {¶ 34} At trial, defendant denied that he placed anything into the cup or assisted anyone in so doing. Defendant explained that his movements observed by the officer were his movements relating to his attempt to find a ticket he previously received. Defendant testified that he was simply trying to make conversation with the officer when he asked whether the K-9 was good.[2]
 {¶ 35} The testimonies of defendant and the officer were conflicting on the central factual issue in this case. As outlined above, defendant denied any knowledge regarding the presence of the crack cocaine in the cup in the center console. To the contrary, Officer Rohaly testified that defendant made furtive movements toward the center console, where the crack cocaine was discovered, which would lead to the reasonable inference that defendant was exhibiting dominion or control over the drugs that were within close proximity to him. It was within the province of the jury, as the finder of fact, to assess Officer Rohaly and defendant's credibility and to resolve evidentiary inconsistencies. See DeHass, supra. Obviously, the jury did not believe defendant's testimony regarding his awareness and actions concerning the crack cocaine. The jury is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the testimony. State v.Wright, Franklin App. No. 03AP-470, 2004-Ohio-677, at ¶ 11. Thus, we give the trier of fact's decisions on credibility and weight great deference. See State v. Covington, *Page 16 
Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28. Furthermore, contrary to defendant's suggestion, his cooperation with authorities after he was stopped does not render his conviction against the manifest weight of the evidence.
 {¶ 36} Viewed in a light most favorable to the prosecution, the evidence adduced at trial provided a sufficient basis for the trier of fact to reasonably conclude that defendant knowingly possessed the crack cocaine that was discovered in the center console of the vehicle driven by defendant. In addition, based on our review of the evidence, we cannot conclude that the jury lost its way in finding defendant guilty as charged in the indictment. This is not an exceptional case in which the evidence weighs heavily against the conviction.
 {¶ 37} Accordingly, we overrule defendant's second assignment of error.
 {¶ 38} Having overruled both of defendant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
SADLER, P.J., and KLATT, J., concur.
[1] Pursuant to R.C. 4549.08(A)(3), it generally is a violation of Ohio law to operate a motor vehicle that displays a license plate that belongs to another motor vehicle. A first-time violation of that section is a misdemeanor of the fourth degree. See R.C. 4549.08(C). Each successive violation is a misdemeanor of the third degree. See id.
[2] Regarding that particular question posed to the officer by defendant, it is conceivable that defendant was simply attempting to make conversation with the officer. It is also possible that defendant was worried that the dog would give a false positive alert if it was not properly trained. However, it also would be reasonable to infer that defendant was worried that the dog would detect the presence of the controlled substance in the vehicle. *Page 1