OPINION
{¶ 1} Defendant-appellant, Jimmy Lee Sanders, appeals the judgment of the Portage County Court of Common Pleas, finding him guilty of Possession of Crack Cocaine, Trafficking in Crack Cocaine, and Failure to Comply with Order or a Signal of Police Officer, and sentencing him to an aggregate prison sentence of ten years. For *Page 2 
the following reasons, we affirm Sanders' convictions, but reverse and remand this case for resentencing.
 {¶ 2} On June 6, 2002, the Portage County Grand Jury indicted Sanders for Possession of Cocaine, a felony of the first degree in violation of R.C. 2925.11(A) and (C)(4)(f); Trafficking in Cocaine, a felony of the first degree in violation of R.C. 2925.03(A)(2) and (C)(4)(g); Failure to Comply with Order or Signal of Police Officer, a felony of the third degree in violation of R.C. 2921.331(B) and (C)(3); and Possessing Criminal Tools, a felony of the fifth degree in violation of R.C. 2923.24(A) and (C). The Failure to Comply count charged that Sanders operated a motor vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop," and thereby "caused a substantial risk of serious physical harm to persons or property."
 {¶ 3} On October 10, 2002, Sanders filed a Motion to Dismiss — Double Jeopardy, seeking to dismiss the Failure to Comply count of the indictment. Sanders argued that he had previously pled guilty, in Kent Municipal Court, to Reckless Operation, "a crime arising out of the same transactions and occurrences" and a "lesser included offense" as the Failure to Comply count.
 {¶ 4} On October 25, 2002, the State filed an Amended Indictment, now charging Sanders with fourth degree Failure to Comply, in violation of R.C. 2921.331(B) and (C)(4), rather than third degree Failure to Comply as in the original indictment. The Amended Indictment charged Sanders with attempting to elude police while "fleeing immediately after the commission of a felony." *Page 3 
 {¶ 5} On October 28, 2002, Sanders filed a Motion to Dismiss the Criminal Tools count, pursuant to Crim. R. 12 on the grounds that a specific misdemeanor statute, R.C. 2925.14 (Possession of Drug Paraphernalia), covered the same conduct alleged in that count of the indictment.
 {¶ 6} On October 29, 2002, the trial court granted Sanders' Motion to Dismiss the third degree Failure to Comply count and accepted the State's Amended Indictment.
 {¶ 7} Sander's case was tried before a jury on October 29 and 30, 2002. The following witnesses testified on behalf of the State.
 {¶ 8} Officer Christopher J. Adkins of the Brimfield Police Department testified that, at about 3:25 a.m., on June 4, 2002, he was driving northbound on Mogadore Road when he passed a red Ford Explorer travelling southbound without tail lights. As soon as Adkins passed the Explorer, it began to accelerate "very rapidly." Adkins turned his cruiser around in a driveway, notified dispatch, and activated his overhead lights and siren. Adkins described the cruiser's overhead lights as a combination of oscillating red, white, and blue rotators, visible from at least 200 yards. Adkins described the siren as "loud" and audible from "from a very far distance away." Officer Adkins estimated the Explorer was "probably 150 yards" in front of him as he began his pursuit.
 {¶ 9} Officer Adkins testified that there is a sharp S-curve in Mogadore Road, about 300 or 400 yards south of the point where he passed the Explorer. Adkins noticed the Explorer break as it entered the curve. The Explorer negotiated the first part of the curve, but went completely off-road during the second bend. The Explorer hit a *Page 4 
pole and turned over on its passenger side. Adkins estimated that he had closed within "a good hundred yards" of the Explorer when it rolled.
 {¶ 10} Officer Adkins stopped his cruiser and approached the Explorer with his gun drawn. There were four occupants in the Explorer. Adkins testified that Sanders was in the driver's seat, although he was laying on top of the passenger in the front seat, since the Explorer had rolled onto its passenger's side. Thereafter, Officer William Reese arrived on the scene. Adkins and Reese had the occupants exit from the rear of the Explorer, one at a time. The first three persons to emerge were frisked and made to sit on the side of the road, about 20 feet from the rear of the vehicle. Finally, Officer Paul F. Delisle arrived on the scene to assist.
 {¶ 11} Sanders was the last to exit the Explorer. Officer Adkins testified that Sanders emerged from the vehicle with his back to the officers and began to move toward the front of the vehicle along the roof. Sanders claimed his pants were falling down. Officer Adkins could not see Sanders' hands for a time because he was adjusting his pants. Eventually, Adkins had Sanders seated by the other occupants of the vehicle. Adkins frisked the seated Sanders and found a digital scale (Tanita 1479) in the front pocket of his coat. Sanders told Adkins the scale was for his medicine. Adkins asked what medicine he was taking, but Sanders did not know the name. No medicine was found at the crash location.
 {¶ 12} Officer Reese testified that, upon arriving at the scene, he walked around the roof of the Explorer. Reese noticed debris, such as clothing and papers, along the side of the roof. Reese testified he looked closely along the roof ("I got down on my knees"), because he had recently investigated a roll-over crash where one of the *Page 5 
vehicle's occupants had been partially ejected from the vehicle and crushed under the side. When Sanders left the Explorer, Reese saw him move where the debris was located. Sanders was "pulling on his clothes and pants and shirt" while Adkins was telling him to raise his hands where they could be seen.
 {¶ 13} After Officer Adkins had searched Sanders and discovered the scale, Reese noticed three plastic bags among the debris that were not there previously. A canine officer was summoned and his dog indicated the bags contained narcotics.
 {¶ 14} Officer Delisle provided corroborative testimony. Like Reese, he searched the roof area carefully to make sure no one was trapped underneath the Explorer and did not see the plastic bags. Delisle testified that, upon exiting the Explorer, Sanders moved to the area where the bags were subsequently found.
 {¶ 15} All three officers testified that, of the occupants of the Explorer, only Sanders was in the vicinity where the bags were found.
 {¶ 16} Brooklyn Riordan, a chemist for the Ohio Bureau of Criminal Identification and Investigation, testified regarding the contents of the bags. The first bag contained 3.72 grams of crack cocaine. The second bag contained 26.55 grams of crack cocaine. The third bag contained three smaller bags, which, in turn, contained 28.51, 26.55, and 27.43 grams of crack cocaine.[1] The total amount of crack cocaine recovered was 110.83 grams.
 {¶ 17} At the close of the State's case, Sanders motioned the court for a judgment of acquittal pursuant to Crim. R. 29, which the court denied. *Page 6 
 {¶ 18} The trial court delivered the following instruction to the jury regarding Failure to Comply: "Before you can find the defendant, Jimmie Lee Sanders, guilty, you must find beyond a reasonable doubt that on or about the fourth day of June 2002, in Portage County, Ohio, that the defendant * * * operated a motor vehicle so as to willfully elude or flee a police officer after receiving a visible or audible signal from the police officer to bring his motor vehicle to a stop." The court further instructed the jury that, if it found Sanders guilty of failure to comply, it would have to make the "additional finding * * * that he was or was not fleeing a police officer after the commission of a felony offense, to wit: Possession of Cocaine." The court's instructions to the jury mirrored the language contained in the amended indictment, charging Sanders with fourth degree Failure to Comply.
 {¶ 19} The jury found Sanders guilty of all counts including the additional finding that he was fleeing a police officer after the commission of a felony offense.
 {¶ 20} On October 31, 2002, the trial court entered an Order and Journal Entry, recording that the jury had found Sanders guilty of Possession and Trafficking in Crack Cocaine and of third degree Failure to Comply. The court also dismissed the Possession of Criminal Tools count as Sanders had requested prior to trial.
 {¶ 21} On July 23, 2007, Sanders' sentencing hearing was held.[2]
The trial court ordered Sanders to serve a nine year sentence for Possession of Crack Cocaine, a nine year sentence for Trafficking in Crack Cocaine, and a one year sentence for Failure to Comply as a "third degree felony." The court ordered the sentences for Possession and *Page 7 
Trafficking in Crack Cocaine to be served concurrently with each other and consecutively with the sentence for Failure to Comply, as required by R.C. 2921.331(D) ("[i]f an offender is sentenced [for third or fourth degree Failure to Comply], and if the offender is sentenced to a prison term for that violation, the offender shall serve the prison term consecutively to any other prison term or mandatory prison term imposed upon the offender"). The court further imposed a period of post release control and ordered his sentence to be served concurrently with a federal prison sentence.
 {¶ 22} Sanders timely appeals and raises the following assignments of error.
 {¶ 23} "[1.] Did the trial court err by sentencing Mr. Sanders for Failure to Comply, a third degree felony, when in fact the jury convicted Mr. Sanders of a different offense, Failure to Comply, a fourth degree felony.
 {¶ 24} "[2.] The trial court committed reversible error by failing to address the defendant personally and/or ask whether Mr. Sanders wished to make a request for allocution.
 {¶ 25} "[3.] Mr. Sanders' counsel's performance fell below an objective standard of reasonableness at sentencing as counsel failed to articulate the parties' sentencing agreement, request a PSI or present any mitigating factors on the client's behalf.
 {¶ 26} "[4.] The State failed to present sufficient evidence to support Mr. Sanders' convictions and/or the jury's verdict against the manifest weight of the evidence."
 {¶ 27} In the first assignment of error, Sanders argues the trial court erred by sentencing him for third degree Failure to Comply when he was only convicted of fourth degree Failure to Comply. We agree. We further hold the trial court committed plain *Page 8 
error by entering judgment "that the Jury returned with a verdict of `Guilty' to * * * Amended Count Three of the Indictment, * * *, `Failure to Comply' a felony of the third degree, in violation of R.C. 2921.331(B)(C)(3)."
 {¶ 28} Article I, Section 10 of the Ohio Constitution provides that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." The Ohio Supreme Court has consistently interpreted this provision to mean that a court may not "convict [the accused] on an indictment essentially different from that found by the grand jury," i.e. in the indictment.Harris v. State (1932), 125 Ohio St. 257, 264; also State v.Headley (1983), 6 Ohio St.3d 475, 478-479 (citations omitted).
 {¶ 29} In the present case, the trial court convicted and sentenced Sanders for third degree Failure to Comply, despite the fact that he was charged with fourth degree Failure to Comply, the jury was only instructed on fourth degree Failure to Comply, and the jury only made the necessary findings to support a conviction for fourth degree Failure to Comply. Moreover, the trial court had determined that Sanders could not be tried for third degree Failure to Comply under the Double Jeopardy Clauses of the United States and Ohio Constitutions.
 {¶ 30} The State argues the error was harmless, inasmuch as the one year sentence Sanders received for Failure to Comply was within the range of permissible sentences for both third and fourth degree felonies and it was the court's intention that Sanders serve an aggregate sentence of ten years, regardless of the particular sentences imposed for each crime. *Page 9 
 {¶ 31} The Ohio Supreme Court has rejected such arguments in the analogous situation where the indictment is amended to change the penalty or degree of an offense. State v. Davis, ___ Ohio St.3d ___,2008-Ohio-4537, at ¶ 9 (change in the amount of drugs indicated in the indictment raised the degree of the offense from a second to a fourth degree felony). The result in both situations is that an offender is convicted of a crime for which he has not been charged, in violation of the Ohio Constitution. The Ohio Supreme Court has held this result to be plain error, which "it is also necessary to correct * * * in order to prevent a manifest miscarriage of justice." Id. at ¶ 12; State v.Burgermeister (Oct. 25, 1990), 8th Dist. No. 57649, 1990 Ohio App. LEXIS 4627, at *14-*16 (trial court committed plain error by sentencing the offender according to the wrong degree of the offenses for which he was convicted).
 {¶ 32} The first assignment of error is with merit.
 {¶ 33} In the second assignment of error, Sanders asserts the trial court committed reversible error by failing to address him personally and afford him the right of allocution.
 {¶ 34} The common law right of allocution is codified in the Rules of Criminal Procedure: "At the time of imposing sentence, the court shall * * * address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." Crim. R. 32(A)(1); State v. Brown,166 Ohio App.3d 252, 2006-Ohio-1796, at ¶ 6 (and the cases cited therein). "Trial courts must painstakingly adhere to Crim. R. 32, guaranteeing the right of allocution. A Crim. R. 32 inquiry is much more than an empty ritual: it represents a defendant's last *Page 10 
opportunity to plead his case or express remorse." State v. Green,90 Ohio St.3d 352, 359-360, 2000-Ohio-182.
 {¶ 35} "In a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim. R. 32(A), resentencing is required unless the error is invited error or harmless error." State v.Campbell, 90 Ohio St.3d 320, 326, 2000-Ohio-183. This court has held that "the failure to grant allocution is not harmless error when a defendant is denied the opportunity to address evidence introduced and considered by the trial court at sentencing." Brown, 2006-Ohio-1796, at ¶ 11, quoting State v. Castle, 4th Dist. No. 03CA24, 2004-Ohio-1992, at ¶ 9.
 {¶ 36} The State argues that Sanders was afforded his right of allocution when the trial court asked at sentencing: "Any evidence you wish to offer?" Although the record indicates the court addressed "you" at sentencing, because there was only a response from defense counsel, the record is not clear whether the appellant was given a sufficient opportunity for allocution. Given our disposition of the first assignment of error, it is not necessary for us to resolve this issue. However, both the United States and Ohio Supreme Courts have made it clear that the right to allocution is an absolute right that imposes a duty upon the sentencing court to specifically address the offender prior to sentencing. "Trial judges before sentencing should * * * unambiguously address themselves to the defendant * * * leav[ing] no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." Green v. United States (1961), 365 U.S. 301,305. Following this precedent, the Ohio Supreme Court has ruled that a sentencing court errs "in not explicitly asking [an offender], in an inquiry directed *Page 11 
only to him, whether he had anything to say before he was sentenced."Green, 90 Ohio St.3d at 359.
 {¶ 37} The second assignment of error is overruled as moot. App. R. 12(A)(1)(c).
 {¶ 38} In the third assignment of error, Sanders argues trial counsel was constitutionally ineffective during sentencing by failing to present any evidence or argument in mitigation and by failing to advise the court of a purported agreed sentencing recommendation between Sanders and the State. Given our disposition of the first assignment of error, Sanders' sentence must be vacated and his case remanded for resentencing. Sanders is no longer represented by the counsel who originally represented him at trial. In light of these two circumstances, Sanders' third assignment of error is rendered moot and need not be addressed. App. R. 12(A)(1)(c).
 {¶ 39} In the fourth and final assignment of error, Sanders argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.
 {¶ 40} The Ohio Rules of Criminal Procedure provide that a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim. R. 29(A). "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury," i.e. "whether the evidence is legally sufficient to support the jury verdict as a matter of law."State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, quoting Black's Law Dictionary (6 Ed. 1990), 1433. Essentially, "sufficiency is a test of adequacy," that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. Id. *Page 12 
 {¶ 41} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307, 319. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 42} Weight of the evidence, in contrast to its sufficiency, involves "the inclination of the greater amount of credible evidence."Thompkins, 78 Ohio St.3d at 387 (emphasis sic) (citation omitted). Whereas the "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support the verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, at ¶ 25 (citation omitted). "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" Id.
 {¶ 43} Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982), 70 Ohio St.2d 79, at the syllabus. When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror." Thompkins, 78 Ohio St.3d at 387
(citation omitted). The reviewing court must consider all the evidence in the record, the *Page 13 
reasonable inferences, and the credibility of the witnesses, to determine whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 44} In order to convict Sanders of fourth degree Failure to Comply, the State had to prove, beyond a reasonable doubt, that Sanders operated a motor vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop," while "fleeing immediately after the commission of a felony." Cf. R.C. 2921.331(B) and (C)(4).
 {¶ 45} With respect to this charge, Sanders argues the State failed to present evidence that he received a signal to bring his vehicle to a stop. Sanders relies upon the testimony that he began to accelerate before Officer Adkins activated his overhead lights and siren. Sanders claims that by the time the signals were activated, he was already close to the S turn where he rolled the vehicle.
 {¶ 46} We disagree with Sanders' interpretation of the evidence. Officer Adkins testified that he was able to briefly pursue Sanders' vehicle after activating his signals and had closed to approximately 150 yards when Sanders' vehicle rolled. Adkins also testified that his lights are visible at distances up to 200 yards. We note that the pursuit of Sanders took place at night on an open road, circumstances that would make the police cruiser's oscillating lights particularly visible. This evidence establishes that it *Page 14 
was possible for Sanders to have received the signal to stop. Thus, there was sufficient evidence of this element.
 {¶ 47} The manifest weight analysis requires us to consider whether this evidence is credible, whether the inference that Sanders actually received the signal is reasonable. We conclude that it is. The fact that Sanders began to accelerate as soon as he passed Officer Adkins' cruiser demonstrates that he was aware of the officer's presence and desired to avoid the officer. It is reasonable to infer that Sanders would continue to focus some attention on the cruiser in order to see if it would turn around and follow. The fact that Sanders entered the S turn at such a high rate of speed as to roll his vehicle also supports the inference that he aware Adkins was pursuing him. Adkins testified that there were warning signs indicating that the speed limit in the S turn was 25 mph. According to the police report, Sanders told the officers that he entered the turn travelling about 80 mph. Thus, it was not only possible for Sanders to be aware of the signal to stop, but probable that he was, in fact, aware of it.
 {¶ 48} In order to convict Sanders of Possession and Trafficking in Crack Cocaine, the State had to prove, beyond a reasonable doubt, that Sanders did "knowingly obtain, possess, or use Crack Cocaine." Cf. R.C. 2925.11(A) and 2925.03(A)(2); State v. Cabrales, 118 Ohio St.3d 54,2008-Ohio-1625, at ¶ 30, citing R.C. 2925.01(K) ("[i]n order to ship a controlled substance, deliver it, distribute it, or prepare it for shipping, etc., the offender must `hav[e] control over' it").
 {¶ 49} With respect to these charges, Sanders argues the State failed to prove that the crack found by the roof of the Explorer belonged to him. Sanders points out that none of the officers ever saw Sanders in possession of the crack. Sanders *Page 15 
maintains the State's theory that Sanders possessed the crack in his clothing and that he shook the bags free after exiting the Explorer constitutes an impermissible inference based upon another inference.
 {¶ 50} While "mere proof of presence in the vicinity of illicit drugs is not enough to prove" the element of possession, State v. Pruitt
(1984), 18 Ohio App.3d 50, 58, the evidence in the present case establishes far more than Sanders' mere presence near the crack cocaine.
 {¶ 51} Officers Reese and Delisle affirmatively testified that, when they arrived at the scene of the accident, the bags containing crack were not present by the Explorer's roof. Sanders was the only occupant of the vehicle to be in the area where the bags were found. Sanders was present in this area under suspicious circumstances. Contrary to the orders of Officer Adkins, Sanders exited the Explorer with his back to the officers and moved toward the front of the vehicle. The officers could not see his hands but were able to tell that he was adjusting his pants. Sanders explained that his pants were falling down. The officers found a digital scale in Sanders' pocket, potentially a piece of drug paraphernalia. Sanders' explanation for having the scale, that it was used for medication, was not credible. Sanders could not say what medicine he was taking; no medicine was found at the scene; and most medicines are dispensed in particular dosages. Thereupon, the officers found the bags of crack cocaine in the location where Sanders was adjusting his pants.
 {¶ 52} The courts have found sufficient evidence of possession in circumstances such as these. See In re Davis, 5th Dist. No. 06 CA 163,2007-Ohio-6994, at ¶ 25 (officers found drugs where the defendant was making a "throwing motion"); State v. *Page 16 Stanley, 10th Dist. No. 06AP-323, 2007-Ohio-2786, at ¶ 33 (officers found drugs in an area of a vehicle where the defendant was making "furtive" movements); State v. Street, 8th Dist. No. 85020,2005-Ohio-1976, at ¶ 11 (officers found drugs in a residence and the defendant "was the only person inside said portion at the time of the search"); State v. Battiste, 9th Dist. No. 02CA008127, 2003-Ohio-2153, at ¶ 10 (officers found drugs in the seat of a police cruiser that the defendant was the last to occupy).
 {¶ 53} While "inferences cannot be built upon inferences, several conclusions may be drawn from the same set of facts." State v.Grant, 67 Ohio St.3d 465, 478, 1993-Ohio-171, citing Hurt v. Charles J.Rogers Transp. Co. (1955), 164 Ohio St. 329, at paragraph three of the syllabus. In the present case, the above facts support the parallel inferences that Sanders possessed the crack and that he dropped it, where it was found, by shaking it loose from his clothing. These inferences do not depend upon each other, but arise from a shared set of facts. Hurt, 164 Ohio St. 329, at paragraph two of the syllabus ("[a]n inference which is based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in by a jury").
 {¶ 54} Finally, Sanders argues that, since there were three other occupants of the Explorer, "there is an equally plausible explanation of defendant's conduct." Sanders points out that the other occupants were not questioned about the drugs and that Sanders' fingerprints were not found on the bags.
 {¶ 55} We note that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value" and, therefore, there is no "requirement that circumstantial evidence must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." Jenks, 61 Ohio St.3d at 272. *Page 17 
Nor do we find it "equally plausible" that one of the other occupants is responsible for the crack. As noted above, only Sanders was in the area where the drugs were found and only Sanders was found in the possession of drug paraphernalia. Since it was clear to the officers that the other occupants did not have the opportunity to place the drugs, there was no reason to question them about the drugs. As to the lack of fingerprints on the bags, Cynthia Mayle, of the Bureau of Criminal Investigation, testified that fingerprints are not often found on plastic bags. The fact, then, that no fingerprints were found on the bags does not carry much weight. The most reasonable interpretation of the evidence presented is that Sanders placed the bags of crack by the Explorer when he exited, and, thus, had possession of the drugs.
 {¶ 56} For the foregoing reasons, there is sufficient evidence to support Sanders' convictions and those convictions are not against the weight of the evidence. The fourth assignment of error is without merit.
 {¶ 57} Since we find merit in the first and second assignments, Sanders's sentence is vacated and this matter is remanded for resentencing. As discussed under the first assignment of error, the trial court also erred by entering a judgment of conviction for third degree Failure to Comply. In this judgment entry, the trial court also erred by failing to merge the convictions for Possession and Trafficking in Crack Cocaine.
 {¶ 58} The Ohio Supreme Court has held: "Trafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) are allied offenses of similar import under R.C. 2941.25(A), because commission of the first offense necessarily results in commission of the second." *Page 18 Cabrales, 2008-Ohio-1625, at paragraph two of the syllabus. "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). Thus, it was proper for Sanders to be indicted for Possession and Trafficking, but those counts should have been merged in the trial court's October 31, 2002 Order and Journal Entry.
 {¶ 59} This court has held "[a]ny error on behalf of a trial court in failing to merge convictions on allied offenses always amounts to plain error." State v. Haines, 11th Dist. No. 2003-L-035, 2005-Ohio-1692, at ¶ 31 (citations omitted), affirmed in part and remanded in part on other grounds, 112 Ohio St.3d 393, 2006-Ohio-6711.
 {¶ 60} Prior to holding the new sentencing hearing, the trial court is instructed to vacate its October 31, 2002 Order and Journal Entry and enter a new judgment, reflecting Sanders' conviction for fourth degree Failure to Comply and merging the Possession and Trafficking counts. In all other respects, the judgment of the Portage County Court of Common Pleas is affirmed. Costs to be taxed against the parties equally.
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY O'TOOLE, J., concurs in judgment only.
[1] Riordan noted that 28.3 grams is the equivalent of one ounce.
[2] The record indicates that Sanders did not appear for the second day of his trial. On November 26, 2002, the trial court ordered Sanders' bond forfeited. By July 2007, Sanders was incarcerated at the Allenwood Federal Correction Institution in White Deer, Pennsylvania. Then, he was transported to Portage County for the sentencing hearing. *Page 1