The STATE of Ohio, Appellee,

v.

PILGRIM, Appellant.

[Cite as *State v. Pilgrim,* 184 Ohio App.3d 675, 2009-Ohio-5357.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–993.

Decided Oct. 8, 2009.

676

Ron O'Brien, Franklin County Prosecuting Attorney, and John H. Cousins IV, Assistant Prosecuting Attorney, for appellee.

Scott & Nemann Co., L.P.A. and Shannon S. Leis; and Torrance C. Pilgrim, pro se.

BRYANT, Judge.

{¶ 1} Defendant-appellant, Torrance C. Pilgrim, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a jury verdict, of one count of possession of crack cocaine in violation of R.C. 2925.11, a first-degree felony, and sentencing him to serve a four-year prison term and pay a mandatory fine of $10,000. Because (1) the trial court did not abuse its discretion in denying defendant's motion to suppress evidence of the crack cocaine, (2) legally sufficient evidence and the manifest weight of the evidence support defendant's conviction, (3) defendant's right to speedy trial was not violated, (4) defendant was not denied the effective assistance of counsel, (5) the prosecution and the trial court did not engage in conduct prejudicing defendant or denying him a fair trial, and (6) the trial court did not err in imposing a $10,000 fine on defendant, we affirm the trial court's judgment.

## I. Factual and Procedural Overview

{¶ 2} By indictment filed April 11, 2008, defendant was charged with one count of possession of crack cocaine in an amount equal to or over 25 grams but less than 100 grams, a first-degree felony in violation of R.C. 2925.11. Following resolution of the parties' motions and completed discovery, a jury trial commenced on October 6, 2008.

{¶ 3} According to the state's evidence, Columbus police officers were dispatched at approximately 9:30 p.m. on September 30, 2007, to the West of Eastland Apartments complex in Columbus in response to a "gun run," a report that someone had a gun. The apartment complex, which consists of several single-story "row" apartment buildings, has a higher than average amount of drug, gang, and firearm activity. The police dispatch described the suspect as an African–American male wearing a white tank top, dark pants, and a yellow baseball hat.

{¶ 4} Moments after hearing the dispatch, Columbus Police Officer Timothy Shepard was the first of four police officers to arrive at the apartment complex. Shepard saw defendant emerging from behind some bushes in front of an apartment, and upon observing that he matched the description of the suspect, directed defendant to come to the police cruiser. Officer Shepard conducted a protective pat-down search of defendant and then arrested him when the officer discovered a baggie containing 4.8 grams of crack cocaine in defendant's pants pocket and a marijuana cigarette tucked behind his right ear. Defendant had $654 in cash on him at the time of his arrest.

{¶ 5} Not finding a gun on defendant during the pat-down search, Officer Shepard directed two other police officers to search for a firearm in the area behind the bushes from which defendant emerged when Shepard first arrived at the scene. The officers did not find a firearm during their search, but on the ground behind the bushes, they discovered individually wrapped baggies of crack cocaine in two pill bottles and a separate, large rock of crack cocaine. The crack cocaine found on the ground had a combined weight of 22.8 grams.

{¶ 6} According to Officer Burkey, the contraband appeared to have been placed on the ground recently, because the pill bottles were clean and rested on top of, rather than underneath, any leaves, spider webs or other debris. He believed the contraband was placed deliberately, not dropped casually, because the pill bottles were carefully grouped together on the ground in a corner behind the bushes in a location where people usually would not be present. None of the police officers saw anyone other than defendant in the vicinity while they were at the scene, although Officer Burkey acknowledged that other people could have been in the area.

{¶ 7} When the officers brought the contraband out from behind the bushes, defendant began sweating profusely and collapsed to the ground; the officers summoned a medical squad, who examined defendant and determined that he did not need medical assistance. Defendant admitted to the officers that the drugs found during the pat-down search were his, but he denied that the drugs found behind the bushes belonged to him.

{¶ 8} In his testimony at trial, defendant confessed that he had been a crack addict since 2002 and acknowledged that he was "high" at the time of his arrest because he had been smoking marijuana laced with crack cocaine. Defendant conceded that he possessed the 4.8 grams of crack cocaine found in his pocket during the pat-down search, but he again denied knowledge or possession of the 22.8 grams of crack cocaine found behind the bushes outside his apartment. According to defendant, he was in the process of moving into a new apartment at West of Eastland Apartments on the evening of September 30, 2007, when a jealous "lady friend" damaged the windows of the apartment on seeing him there with another woman. Defendant testified that he was standing in the bushes outside his apartment when Officer Shepard arrived at the scene, because he was looking at the damage to the windows. He denied seeing the drugs or putting them on the ground while he was standing there. Defendant explained that he had the $654 that evening because he was going to pay his rent, which was due the next day.

{¶ 9} After two days of testimony, the jury found defendant guilty as charged in the indictment. On October 10, 2008, the trial court sentenced defendant to four years in prison, with 163 days of jail-time credit, and imposed a mandatory fine of $10,000. The trial court journalized its sentencing decision in a judgment entered October 17, 2008, from which defendant timely appealed.

## II.   Assignments of Error

{¶ 10} On appeal, six errors are assigned in appellate counsel's brief:

Assignment of Error One

The trial court abused its discretion by denying appellant's motion to suppress evidence.

Assignment of Error Two

Appellant's conviction is based upon circumstantial evidence that is impermissibly based on inference upon inference.

Assignment of Error Three

The record contains insufficient evidence to support appellant's conviction for possession of a controlled substance.

Assignment of Error Four

Appellant's conviction is against the manifest weight of the evidence.

Assignment of Error Five

The trial court abused its discretion by denying appellant's motion to dismiss for speedy trial in violation [sic].

Assignment of Error Six

Appellant was denied his due process right to a fair trial and effective assistance of counsel.

{¶ 11} Four additional errors are assigned in a supplemental brief defendant filed pro se:

Supplemental Assignment of Error One

Appellant's right to a speedy trial as guaranteed by RC § 2945.71 et seq., the Sixth and Fourteenth Amendments of the United States Constitution, and Article 1, Section § 10 Ohio Constitution was violated.

Supplemental Assignment of Error Two

The prosecutor's pattern of misconduct throughout the proceedings in case No. 08 CR 2691 and at trial denied appellant/defendant his rights under O.R.C. § 2945.71 et seq., and the Sixth and Fourteenth Amendments of the United States Constitution, and Article I, Section § 10 of the Ohio Constitution and deprived appellant of a fair trial.

Supplemental Assignment of Error Three

The trial court plainly erred where it failed to provide appellant a speedy trial; allowed trial to proceed on a charge not included in the indictment; failed to make a journal entry prior to the tolling of time for speedy trial; failed to suppress evidence; denied use of police reports by jury during deliberations; advised jurors without appellant being present; and assisted the prosecutor in swaying the jurors.

Supplemental Assignment of Error Four

The fine imposed at sentence and the forced collection thereof infringes upon appellant's rights under the Eighth and Fourteenth Amendments to the United States Constitution, R.C. § 2929.18(B)(1), R.C. 2947.14, and related Sections of the Ohio Constitution.

## III. Denial of Motion to Suppress

{¶ 12} The first assignment of error that defendant's appellate counsel presented contends that the trial court abused its discretion in denying defendant's motion to suppress evidence of the crack cocaine.

{¶ 13} "[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact." *State v. Vest*

(May 29, 2001), 4th Dist. No. 00CA2576, 2001 WL 605217. Thus, an appellate court's standard of review of the trial court's decision denying the motion to suppress is two-fold. *State v. Reedy*, 10th Dist. No. 05AP–501, 2006-Ohio-1212, 2006 WL 648861, ¶ 5, citing *State v. Lloyd* (1998), 126 Ohio App.3d 95, 100–101, 709 N.E.2d 913. Because the trial court is in the best position to weigh the credibility of the witnesses, "we must uphold the trial court's findings of fact if they are supported by competent, credible evidence." Id., citing *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141. We nonetheless must independently determine, as a matter of law, whether the facts meet the applicable legal standard. Id., citing *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906. The state bears the burden of establishing the validity of a warrantless search. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889, citing *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 373 N.E.2d 1252.

{¶ 14} Challenging the lawfulness of Officer Shepard's investigatory stop, defendant contends on appeal that "the state did not demonstrate at the suppression hearing that the facts precipitating the police dispatch justified a reasonable suspicion of criminal activity." Defendant notes that Officer Shepard conducted the investigatory stop "based solely on a tip received from an anonymous informant that did not possess sufficient indicia of reliability." Defendant then postulates that because "the informant is properly categorized as an anonymous informant," the state needed to produce independent police corroboration to render the anonymous informant's tip sufficiently reliable to justify reasonable suspicion. In the absence of such evidence, defendant contends that "the fruits of the unlawful investigatory stop must be suppressed," because Officer Shepard's investigatory stop was unreasonable under the totality of the circumstances.

{¶ 15} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Section 14, Article I of the Ohio Constitution prohibit the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *State v. Mendoza*, 10th Dist. No. 08AP–645, 2009-Ohio-1182, 2009 WL 690204, ¶ 11, citing *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576; *State v. Stanley*, 10th Dist. No. 06AP–323, 2007-Ohio-2786, 2007 WL 1641425, ¶ 13. The exception at issue here is an investigative stop, commonly referred to as a *Terry* stop. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. "An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.'" *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864,

¶ 35, quoting *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621. The propriety of a police officer's investigative stop is viewed in light of the totality of the surrounding circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus.

{¶ 16} Informants fall into one of three classes: anonymous informants, known informants, and identified citizen informants. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 720 N.E.2d 507. An anonymous informant's tip can assist in creating a reasonable suspicion of criminal activity but, standing alone, is generally insufficient because it lacks the necessary indicia of reliability. *Jordan*, 104 Ohio St.3d 21, 817 N.E.2d 864, at ¶ 36, citing *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301. "Accordingly, anonymous tips normally require suitable corroboration demonstrating ' "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." ' " *Jordan* at ¶ 36, quoting *Florida v. J.L.* (2000), 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254, quoting *White*, 496 U.S. at 329, 110 S.Ct. 2412, 110 L.Ed.2d 301.

{¶ 17} In moving to suppress evidence, a defendant must state the legal and factual grounds of the motion with particularity in challenging the validity of a warrantless search or seizure. Crim.R. 47; *State v. Shindler* (1994), 70 Ohio St.3d 54, 636 N.E.2d 319, syllabus; *Xenia*, 37 Ohio St.3d at 218–219, 524 N.E.2d 889. The prosecution cannot be expected to anticipate the specific legal and factual grounds upon which the defendant challenges the legality of a warrantless search and seizure. Id. at 218, 524 N.E.2d 889. The prosecution must know the grounds of the challenge in order to prepare its case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits. Id.

{¶ 18} The sole ground for defendant's motion to suppress in the trial court was the allegedly invalid warrantless "search" conducted "in the vicinity of defendant's residence." Defendant did not assert in the trial court that the investigatory stop was invalid because it was "based solely on a tip received from an anonymous informant that did not possess sufficient indicia of reliability." As a result, the issue was not litigated, and no evidence was presented in the trial court either to identify the person who provided the "gun-run" tip or to classify the person as an "anonymous informant."

{¶ 19} Well established in law is the principle that a party cannot raise new issues or legal theories for the first time on appeal. *State v. Atchley*, 10th Dist. No. 07AP–412, 2007-Ohio-7009, 2007 WL 4532676, ¶ 8, citing *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 322 N.E.2d 629. Specifically, with regard to motions to suppress, a failure on the part of a defendant to raise the specific basis of a challenge to the admission of evidence in

the trial court constitutes a waiver of that issue on appeal. *Atchley*, citing *Xenia*, 37 Ohio St.3d at 218–219, 524 N.E.2d 889; *Stanley*, 2007-Ohio-2786, 2007 WL 1641425, at ¶ 25; *State v. Hernandez* (Nov. 13, 2001), 10th Dist. No. 01AP–23, 2001 WL 1403104. See *Shindler*, 70 Ohio St.3d at 58, 636 N.E.2d 319 ("[b]y requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived").

{¶ 20} Defendant's failure to raise in the trial court the issue now raised on appeal constitutes a waiver of that issue on appeal. Moreover, because defendant did not separately argue on appeal that the crack cocaine must be suppressed as the fruit of an unlawful "search," we need not address that issue. See App.R. 12(A)(2) and 16(A)(7); *Hernandez*, 10th Dist. No. 01AP–23, 2001 WL 1403104.

{¶ 21} Even if we were to consider defendant's challenge to the lawfulness of the investigatory stop, it is without merit on this record. The state presented evidence at the suppression hearing that defendant matched the description of the suspect who reportedly had a gun in the West of Eastland Apartments complex shortly before Officer Shepard conducted his investigatory stop of defendant. It was dark at the time of the investigatory stop, the apartment complex had a higher than average amount of gun and drug activity, and defendant was alone and lurking behind some bushes when Officer Shepard observed him. Given the circumstances, Officer Shepard reasonably detained defendant to question him and to conduct a protective pat-down search of him for a weapon. *Mendoza*, 2009-Ohio-1182, 2009 WL 690204, at ¶ 12, citing *Pepper Pike v. Parker* (2001), 145 Ohio App.3d 17, 20, 761 N.E.2d 1069, citing *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 ("[e]ven facts that might be given an innocent construction will support the decision to detain an individual momentarily for questioning" as long as it is reasonable to infer from the totality of the circumstances that the individual may be involved in criminal activity); *Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus ("[w]here a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others").

{¶ 22} Defendant's first assignment of error is overruled.

## IV. Sufficiency of the Evidence

{¶ 23} The second and third assignments of error that defendant's appellate counsel presents are related and together assert that the state failed to present sufficient evidence, absent the impermissible stacking of inferences, to prove that defendant possessed the crack cocaine found on the ground outside his

apartment. Defendant contends that his mere proximity to the drugs found on the ground was the only evidence linking him to those drugs: no fingerprint evidence linked him to the drugs, and no evidence indicates that he knew the drugs were on the ground behind the bushes, placed or dropped the drugs there, or attempted to exercise dominion or control over the drugs. Defendant maintains that his mere presence in the location where the drugs were found does not conclusively establish his constructive possession of the drugs, especially in light of evidence that the location is a common area of the apartment complex, the complex has a high volume of drug activity, and people regularly move about the apartment complex. As in the trial court, defendant does not contest that he had possession of the 4.8 grams of crack cocaine found in his pants pocket during the pat-down search.

{¶ 24} Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Conley* (Dec. 16, 1993), 10th Dist. No. 93AP–387, 1993 WL 524917.

{¶ 25} "Although inferences cannot be built upon inferences, several conclusions may be drawn from the same set of facts." *State v. Grant* (1993), 67 Ohio St.3d 465, 478, 620 N.E.2d 50, citing *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 58 O.O. 122, 130 N.E.2d 820, paragraph three of the syllabus. "And it is equally proper that a series of facts or circumstances may be used as the basis for ultimate findings or inferences." Id. at 334, 58 O.O. 122, 130 N.E.2d 820. "Because reasonable inferences drawn from the evidence are an essential element of the deductive reasoning process by which most successful claims are proven, the rule against stacking inferences must be strictly limited to inferences drawn exclusively from other inferences." *State v. Evans* (Dec. 27, 2001), 10th Dist. No. 01AP–594, 2001 WL 1653864, citing *Donaldson v. N. Trading Co.* (1992), 82 Ohio App.3d 476, 481, 612 N.E.2d 754. See also *Motorists Mut. Ins. Co. v. Hamilton Twp. Trustees* (1986), 28 Ohio St.3d 13, 17, 28 OBR 77, 502 N.E.2d 204 (remarking on the rule's "dangerous potential for subverting the fact-finding process and invading the sacred province of the jury").

{¶ 26} Defendant was convicted of violating R.C. 2925.11, which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." Similarly, "[a] person has knowledge of

circumstances when he is aware that such circumstances probably exist." Id. "[P]ossession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

{¶ 27} Possession of a controlled substance may be actual or constructive. *State v. Saunders*, 10th Dist. No. 06AP–1234, 2007-Ohio-4450, 2007 WL 2453291, ¶ 10, citing *State v. Burnett*, 10th Dist. No. 02AP–863, 2003-Ohio-1787, 2003 WL 1818935, ¶ 19, citing *State v. Mann* (1993), 93 Ohio App.3d 301, 308, 638 N.E.2d 585. A person has actual possession of an item when it is within his immediate physical control. *Saunders; State v. Norman*, 10th Dist. No. 03AP–298, 2003-Ohio-7038, 2003 WL 22999499, ¶ 29; *State v. Messer* (1995), 107 Ohio App.3d 51, 56, 667 N.E.2d 1022. Constructive possession exists when a person knowingly exercises dominion and control over an object, even though the object may not be within the person's immediate physical possession. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 24 O.O.3d 155, 434 N.E.2d 1362, syllabus. Because the crack cocaine here was not found on defendant's person, the state was required to prove that he constructively possessed it.

{¶ 28} Circumstantial evidence alone may be sufficient to support the element of constructive possession. *Jenks*, 61 Ohio St.3d at 272–273, 574 N.E.2d 492. Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, constitute evidence from which the trier of fact can infer whether the defendant had constructive possession over the subject drugs. *Stanley*, 2007-Ohio-2786, 2007 WL 1641425, at ¶ 31; *Norman*, 2003-Ohio-7038, 2003 WL 22999499, at ¶ 31; *State v. Baker*, 10th Dist. No. 02AP–627, 2003-Ohio-633, 2003 WL 283176, ¶ 23. The mere presence of an individual in the vicinity of illegal drugs is insufficient to establish the element of possession, but if the evidence demonstrates that the individual was able to exercise dominion or control over the drugs, he or she can be convicted of possession. *Saunders*, 2007-Ohio-4450, 2007 WL 2453291, at ¶ 11, citing *State v. Wyche*, 10th Dist. No. 05AP–649, 2006-Ohio-1531, 2006 WL 827787, ¶ 18, and *State v. Chandler* (Aug. 9, 1994), 10th Dist. No. 94APA02–172, 1994 WL 435386.

{¶ 29} When viewed in a light most favorable to the prosecution, the evidence presented at trial was legally sufficient to prove defendant's constructive possession of the 22.8 grams of crack cocaine found outside his apartment. Defendant admitted that he was a crack cocaine addict with two prior convictions for drug possession, admitted that the crack cocaine and marijuana cigarette found during the pat-down search were his, and admitted that he had smoked marijuana laced with crack cocaine shortly before Officer Shepard arrived at the scene. The police found the 22.8 grams of crack cocaine in the location where defendant was

standing when Officer Shepard arrived at the scene, the drugs appeared to have been placed in that location shortly before police discovered them, and no one other than defendant was in the area. Although the location where the drugs were found was a "common area" of the apartment complex, it was not one where people usually would be present, as it was in a corner behind some bushes outside of defendant's apartment. Based upon the evidence, the jury could reasonably find, without the impermissible stacking of inferences, that defendant, who had recent and sole proximity to the drugs and an ability to exercise dominion and control over the drugs, placed the drugs on the ground behind the bushes in order to prevent police from detecting them.

{¶ 30} Because defendant's conviction of possession of crack cocaine in an amount exceeding 25 grams but less than 100 grams is supported by (1) defendant's admission that he had actual possession of the 4.8 grams of crack cocaine found during the pat-down search and (2) legally sufficient evidence that defendant had constructive possession of an additional 22.8 grams of crack cocaine, we overrule defendant's second and third assignments of error.

## V.  Manifest Weight of the Evidence

{¶ 31} The fourth assignment of error asserts that defendant's conviction is against the manifest weight of the evidence. Defendant contends that the jury "lost its way" in finding him guilty of possession of cocaine because (1) evidence presented at trial was contradictory and did not fit together in a logical pattern, and (2) the state relied on unreliable and uncertain circumstantial evidence that was based upon an impermissible stacking of inferences to prove that defendant had knowledge and constructive possession of the drugs found on the ground outside his apartment.

{¶ 32} When presented with a manifest-weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt. *Conley*, 10th Dist. No. 93AP–387, 1993 WL 524917; *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541 ("[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The jury thus may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part or none of a witness's testimony." *State v. Raver*, 10th Dist. No 02AP–604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 26

O.O.2d 366, 197 N.E.2d 548. Reversals of convictions as being against the manifest weight of the evidence are reserved for exceptional cases where the evidence weighs heavily in favor of the defendant. *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 33} Defendant initially contends that the jury lost its way because the evidence presented at trial contradicted the prosecution's theory of the case. Defendant argues that the state's theory in closing argument was that defendant quickly "tossed the drugs" behind the bushes when he saw Officer Shepard. Defendant asserts that contrary to the state's theory, Officer Burkey at trial testified that the drugs appeared to have been intentionally and carefully placed on the ground behind the bushes. The record, however, does not support defendant's contention that the prosecution argued that defendant "tossed the drugs" upon seeing Officer Shepard.

{¶ 34} Defendant also argues that the jury lost its way due to contradictory evidence offered through the testimony of Adrinne Davis. Although she stated that she was in the area and saw the police outside defendant's apartment the night he was arrested, police officers testified that no one other than defendant was in the vicinity. Even if Davis's testimony were true, it does not necessarily contradict the police officers' testimony that they personally did not see anyone other than defendant at the scene. Moreover, Officer Burkey expressly acknowledged that "there could have been other people in the area." Regardless, defendant "is not entitled to reversal on manifest weight grounds merely because inconsistent evidence was offered at trial," as "[t]he trier of fact is free to believe or disbelieve any or all of the testimony presented." *State v. Favor*, 10th Dist. No. 08AP–215, 2008-Ohio-5371, 2008 WL 4598297, ¶ 10.

{¶ 35} Defendant next contends that the jury clearly lost its way in finding him guilty, because the verdict is not logical: the jury, defendant asserts, necessarily concluded that defendant disposed of some, but not all, of the drugs in his possession upon seeing the police. Contrary to defendant's contention, the jury logically could reach such a conclusion. Especially in light of defendant's admission that he was "high" due to smoking a marijuana cigarette laced with crack cocaine shortly before Officer Shepard arrived, the jury logically could find that defendant discarded the larger amount of crack cocaine that was in his possession but simply forgot about the marijuana cigarette tucked behind his ear and overlooked the smaller amount of drugs in his pants pocket.

{¶ 36} Finally, defendant contends that his conviction is against the manifest weight of the evidence because the state relied solely upon evidence of defendant's "mere proximity" in order to prove that he had possession of the drugs found on the ground behind the bushes outside his apartment. We addressed defendant's contention, in part, in concluding that the state presented legally

sufficient evidence to prove defendant's constructive possession of the drugs at issue. The evidence defendant presented at trial created, at best, a credibility determination properly left to the jury, so we cannot say that this is the exceptional case in which the evidence weighs heavily in favor of defendant.

{¶ 37} Because defendant's conviction is not against the manifest weight of the evidence, defendant's fourth assignment of error is overruled.

## VI. Denial of Right to Speedy Trial

{¶ 38} The fifth assignment of error that appellate counsel presents and the first assignment of error raised in defendant's supplemental brief on appeal contend that the state violated defendant's right to a speedy trial.

{¶ 39} The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to a speedy trial by the state; Section 10, Article I of the Ohio Constitution independently guarantees the right. *State v. Bayless,* 10th Dist. No. 02AP–215, 2002-Ohio-5791, 2002 WL 31388972, ¶ 10. Pursuant to R.C. 2945.71(C)(2), a person "against whom a felony charge is pending" must be "brought to trial within [270] days after the person's arrest." A felony charge is not "pending" under the statute until the accused has been formally charged by a criminal complaint or indictment, is held pending the filing of charges, or is released on bail or recognizance. *State v. Azbell,* 112 Ohio St.3d 300, 2006-Ohio-6552, 859 N.E.2d 532, syllabus.

{¶ 40} R.C. 2945.73(B) provides that a person charged with an offense shall be discharged, upon his or her motion made at or prior to the commencement of trial, if he or she is not brought to trial within the time required by R.C. 2945.71. The time to bring an accused to trial can be extended for reasons enumerated in R.C. 2945.72, including "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E). See *State v. Sanchez,* 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283; *State v. Palmer,* 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011. The speedy-trial time can also be extended for "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(H).

{¶ 41} When reviewing a speedy-trial issue, an appellate court must calculate the number of days chargeable to either party and determine whether the accused was properly brought to trial within the time limits set forth in R.C. 2945.71. *State v. Riley,* 162 Ohio App.3d 730, 2005-Ohio-4337, 834 N.E.2d 887, ¶ 19, citing *State v. DePue* (1994), 96 Ohio App.3d 513, 516, 645 N.E.2d 745. For purposes of computing time under the statute, each day an accused is held in jail

in lieu of bond counts as three days under R.C. 2945.71(E), but the date of arrest is not included. *State v. Miller,* 10th Dist. No. 06AP–36, 2006-Ohio-4988, 2006 WL 2733241, ¶ 7; *State v. Steiner* (1991), 71 Ohio App.3d 249, 593 N.E.2d 368. See Crim.R. 45(A) (the date of the act or event from which the designated period of time begins to run shall not be included); R.C. 1.14 ("[t]he time within which an act is required by law to be done shall be computed by excluding the first and including the last day").

{¶ 42} Here, because defendant was incarcerated pretrial, the state was required to bring him to trial within 90 days after his arrest on the felony drug charge. *State v. Small,* 10th Dist. No. 06AP–1110, 2007-Ohio-6771, 2007 WL 4395621, ¶ 4. According to the record, defendant demanded discovery and requested a bill of particulars on July 2, 2008, and the state responded on July 21, 2008, a 19–day response time. Defendant's demand for discovery and request for a bill of particulars was a tolling event under R.C. 2945.72(E). *State v. Brown,* 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, syllabus (demand for discovery or a bill of particulars is a tolling event). Moreover, the 19 days that the state used to respond to defendant's demand for discovery and request for a bill of particulars were reasonable and tolled the speedy-trial time requirements for that length of time. See *State v. Lair,* 10th Dist. No. 05AP–1083, 2006-Ohio-4109, 2006 WL 2300444, ¶ 22, and *Small,* 2007-Ohio-6771, 2007 WL 4395621, at ¶ 7 (a 20–day response time to a defendant's request for discovery is not unreasonable and tolls the time for speedy trial).

{¶ 43} Defendant's time for speedy trial was tolled an additional 49 days from August 8, 2008, the date defense counsel filed a motion to suppress evidence of the crack cocaine, to September 26, 2008, the date the trial court held a suppression hearing and overruled the motion. R.C. 2945.72(E); see *Sanchez,* 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, at ¶ 25, citing *State v. Myers,* 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 44. Although defendant did not personally agree to a continuance or waive his right to a speedy trial for that period of time, his attorney did so on his behalf. See *State v. Taylor,* 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 33; *State v. McBreen* (1978), 54 Ohio St.2d 315, 8 O.O.3d 302, 376 N.E.2d 593, syllabus (an attorney may waive a defendant's right to a speedy trial even without his client's consent). When combined, the two tolling events extended by 68 days the time required to bring defendant to trial.

{¶ 44} A remaining question is when the time under the speedy-trial statutes began to run in this case. Although the 270–day statutorily prescribed limitation period begins to run after a person's "arrest," R.C. 2945.71(C)(2), the record in this case contains conflicting information concerning the date of defendant's arrest.

{¶ 45} Initially, the record indicates that the warrant on the indictment was served on defendant on June 4, 2008, and he was placed under arrest and incarcerated that same day. Based upon a June 4, 2008 "arrest" date, the speedy-trial limitation period began to run on June 5, 2008, the day after defendant's arrest, and it ended on October 6, 2008, the date he was brought to trial. Crim.R. 45(A); R.C. 1.14. The length of time from June 5, 2008, and October 6, 2008, is 124 days, or 34 days outside the 90–day speedy-trial window. When, however, the 68 days of the two tolling events are factored in, the period of time that elapsed before defendant was brought to trial after his arrest is 56 days, or within the statutorily prescribed limitation period.

{¶ 46} The record nonetheless also contains a document formalizing defendant's "plea of not guilty" and stating he was arrested on "May 19, 2008." The date is handwritten on the document in a blank space provided for that purpose. The document was entered into the record on June 9, the same date as defendant's arraignment, and defendant, defense counsel, counsel for the state, and a judge or magistrate who accepted defendant's plea of not guilty all signed it. If we assume that defendant was arrested on May 19, 2008, the length of time between his "arrest" and the date he was brought to trial is 140 days. When the 68 days of tolling are factored in, the length of time before he was brought to trial is 72 days, still well within the statutory time constraints.

{¶ 47} Apart from those two "arrest" dates reflected in the record, defendant pro se proffers two other "arrest" dates for this court to utilize in calculating his speedy-trial time. Defendant claims that he initially was arrested on September 30, 2007, the date of the drug offense, and at that time was held in jail for 10 days before being released pending an indictment. He further claims that after the indictment was filed on April 11, 2008, he was rearrested on May 12, 2008, for the same offense and was incarcerated for 148 days from that date until trial began on October 6, 2008. According to defendant, the combined pretrial incarceration periods total 158 days and violate his speedy-trial rights.

{¶ 48} Although the record supports defendant's assertion that he initially was arrested on September 30, 2007, nothing in the record indicates that he at that time was a person "against whom a felony charge [was] pending," as required by R.C. 2945.71(C)(2) to start the speedy-trial clock. Specifically, the record does not show that any time prior to April 2008 defendant was (a) formally charged by a criminal complaint or indictment, (b) held pending the filing of charges, or (c) released on bail or recognizance. See *Azbell*, 112 Ohio St.3d 300, 859 N.E.2d 532. Even if we could assume that some felony charge was pending at the time, the record does not substantiate defendant's claim that he was "rearrested" on May 12, 2008. Finally, even if we accept defendant's claim that he was arrested and held in jail in lieu of bond for two periods totaling 158 days prior to being brought

to trial, the state did not violate his right to a speedy trial. When the 68 days of tolling are applied to the 158 days that defendant claims he awaited trial, the result is that he was brought to trial within 90 days, the statutorily prescribed time limitation.

{¶ 49} Because defendant's right to a speedy trial was not violated, we overrule the fifth assignment of error that his appellate counsel raised and the first assignment of error presented in defendant's supplemental brief on appeal.

## VII.  Ineffective Assistance of Counsel

{¶ 50} In the sixth assignment of error, defendant claims that he was denied the effective assistance of trial counsel because his counsel (1) failed to object to the violation of defendant's right to a speedy trial and (2) failed to subpoena witnesses and documents that would have contradicted the state's theory of the case, impeached the testimony of its witnesses, and bolstered defendant's credibility.

{¶ 51} To prove ineffective assistance of counsel, defendant must show that defense counsel's performance was deficient. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Defendant thus must show that his counsel made errors so serious that counsel was not functioning as the "counsel" that the Sixth Amendment guarantees. Id. Defendant also must establish that his counsel's deficient performance prejudiced him, demonstrating that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. Id. Unless defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Id.

{¶ 52} Initially, defense counsel was not deficient in failing to object or move to dismiss on speedy-trial grounds. As noted, defendant was brought to trial within the time constraints prescribed by R.C. 2945.71, and his right to a speedy trial was not violated. Defendant was not denied the effective assistance of counsel because (1) defense counsel had no duty under *Strickland* to file an unmeritorious motion, and (2) defendant suffered no prejudice due to his counsel's failure to object or move to dismiss based on speedy-trial grounds.

{¶ 53} Nor can we conclude on this record that defense counsel rendered deficient performance by failing to subpoena witnesses and documents that defendant here claims would have bolstered his defense. Defendant contends that he was prejudiced because defense counsel (1) failed to call witnesses who would have testified that defendant was not the only person in the area surrounding his apartment when he was arrested, (2) failed to subpoena the apartment complex's maintenance records that would have established that the

windows on defendant's apartment were broken on September 30, 2007, adding credibility to defendant's reason for standing outside his apartment behind the bushes, and (3) failed to subpoena the apartment complex manager, who could corroborate defendant's testimony that he had that $654 with him at the time of his arrest to pay his rent due the next day, thus undermining the state's suggestion that defendant possessed the fairly significant amount of cash for drug-related reasons.

{¶ 54} "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Madison*, 10th Dist. No. 08AP–246, 2008-Ohio-5223, 2008 WL 4482799, ¶ 11, citing *State v. Treesh* (2001), 90 Ohio St.3d 460, 490, 739 N.E.2d 749. An appellant has the burden to show that the witness's testimony would have significantly assisted the defense and would have affected the outcome of the case. *State v. Dennis*, 10th Dist. No. 04AP–595, 2005-Ohio-1530, 2005 WL 736150, ¶ 22. Defendant here cannot demonstrate that his trial counsel rendered ineffective assistance because nothing in the record reveals what the purported witnesses would have testified to or what the maintenance records would have revealed. Absent a showing of prejudice, this court will not consider such decisions ineffective assistance. *State v. Mathias*, 10th Dist. No. 06AP–1228, 2007-Ohio-6543, 2007 WL 4285107, ¶ 36.

{¶ 55} Because nothing in the record supports defendant's claim that the witnesses' testimony or the maintenance records for defendant's apartment would have significantly assisted the defense or affected the outcome at trial, on this record, we can conclude only that defense counsel's failure to present the witnesses and documentary evidence was the result of reasonable trial strategy. Defendant's sixth assignment of error is overruled.

## VIII. Prosecutorial Misconduct

{¶ 56} The second assignment of error in defendant's supplemental brief on appeal contends that the prosecution denied him a fair trial by engaging in a "pattern of misconduct throughout the proceedings." Defendant asserts that the prosecution (1) failed to respond to defendant's pro se motion to dismiss on speedy-trial grounds, (2) made remarks during opening and closing arguments that the evidence does not support and were designed to inflame the jurors, and (3) used a police report at trial to refresh a witness's testimony without disclosing the report to defendant during discovery.

{¶ 57} The test for prosecutorial misconduct is whether the prosecution's conduct was improper, and if so, whether the conduct prejudicially affected substantial rights of the accused. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14

OBR 317, 470 N.E.2d 883. " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Wilkerson,* 10th Dist. No. 01AP–1127, 2002-Ohio-5416, 2002 WL 31248571, ¶ 38, quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78. Therefore, prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial. *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 473 N.E.2d 768.

{¶ 58} Because defense counsel failed to object to any of the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. *State v. Diar,* 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 139; *State v. Saleh,* 10th Dist. No. 07AP–431, 2009-Ohio-1542, 2009 WL 840755, ¶ 68. A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice. Id. We may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct. *State v. Williams* (1997), 79 Ohio St.3d 1, 12, 679 N.E.2d 646.

{¶ 59} Initially, defendant argues that the prosecution failed to seek justice and sought only to convict, citing as support the prosecution's failure to respond to defendant's pro se motions that sought relief on speedy-trial grounds. The record, however, reflects that at the conclusion of the September 26, 2008 suppression hearing, defendant's attorney withdrew defendant's pro se motions asserting speedy-trial violations. Moreover, under well-established Ohio law, a criminal defendant has the right either to appear pro se or by counsel, but has no corresponding right to act as co-counsel on his or her own behalf. *State v. Martin,* 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, paragraph one of the syllabus; *State v. Thompson* (1987), 33 Ohio St.3d 1, 6–7, 514 N.E.2d 407. "[T]hese two rights are independent of each other and may not be asserted simultaneously." *Martin.* Accordingly, even if defense counsel had not withdrawn defendant's pro se motions, the trial court had no obligation to entertain them, and the prosecution had no obligation to respond to them.

{¶ 60} Defendant next claims that the prosecution was untruthful during opening statement to the jury when it stated, "I will prove that when the officers brought the defendant out of the bushes," the defendant "tried to throw away" the drugs. Defendant contends that no testimony or evidence was presented at trial to support the prosecution's statements. The trial transcript reveals that the prosecution never made the statements that defendant asserts it did. Accordingly, defendant's claim lacks merit.

{¶ 61} Defendant also claims that the prosecution's statements during closing arguments were "a ploy designed to inflame the jurors and appeal to their

passions, and cause them to lose their way during deliberations." We review the prosecution's summation in its entirety to determine if the allegedly improper remarks prejudicially affected defendant's substantial rights. *Treesh*, 90 Ohio St.3d at 466, 739 N.E.2d 749; *State v. Smith* (2000), 87 Ohio St.3d 424, 442, 721 N.E.2d 93, citing *Smith*, 14 Ohio St.3d at 14, 14 OBR 317, 470 N.E.2d 883. Here, the prosecution's closing arguments appropriately summarized the evidence adduced at trial and did not make improper remarks prejudicial to defendant, as he claims for the first time on appeal. Defendant's claim is thus without merit.

{¶ 62} Lastly, defendant claims that the prosecution engaged in misconduct when, after failing to disclose the police report to defendant during discovery, the prosecution used the report at trial to refresh a witness's memory that defendant had $654 cash with him when he was arrested. Defendant contends that he was prejudiced because the prosecution used the evidence of the amount of defendant's cash to imply that he was engaged in drug trafficking, not drug possession.

{¶ 63} The prosecution has a duty to disclose to a criminal defendant evidence material to guilt or punishment. *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215. The prosecution's duty to disclose encompasses impeachment evidence, exculpatory evidence, and evidence known only to police investigators and not to the prosecution. *Strickler v. Greene* (1999), 527 U.S. 263, 280–81, 119 S.Ct. 1936, 144 L.Ed.2d 286. Here, nothing in the record suggests that the police inventory report was not disclosed or not made available to defendant. The record thus does not demonstrate any error, let alone plain error.

{¶ 64} Because defendant failed to demonstrate that the prosecution engaged in misconduct that denied him a fair trial, we overrule the second assignment of error presented in his supplemental brief on appeal.

## IX. Judicial Misconduct/Trial Court Errors

{¶ 65} Defendant's third assignment of error in his supplemental appellate brief asserts that the trial court committed plain error prejudicial to defendant by (1) failing to dismiss based on violation of defendant's right to speedy trial, (2) allowing the jury to consider a lesser included drug possession offense that was not charged in the indictment, (3) communicating with the jury outside the presence of defendant and his counsel, and (4) instructing the jury on tests to be used in evaluating defendant's credibility. Because defendant did not object to any of the alleged errors, we review the alleged improprieties under the "plain error" standard of review. See Crim.R. 52(B).

{¶ 66} Initially, defendant claims that the trial court plainly erred by failing to entertain a pro se motion that defendant filed seeking dismissal on speedy-trial

grounds. Apart from the reasons already noted that render defendant's speedy-trial contentions unmeritorious, the additional argument he presents under this assignment of error also is unpersuasive. Defendant claims the trial court plainly erred by failing to file a journal entry prior to the expiration of the time limits under the speedy-trial statutes when the court, on its own motion, continued the trial from September 26, 2008, to October 6, 2008. See *State v. Mincy* (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571, syllabus (holding that the trial court must journalize an order granting a sua sponte continuance prior to the expiration of the statutorily prescribed speedy-trial limit). Contrary to defendant's assertion, the record reflects that the trial court filed an "entry" on September 29, 2008, journalizing its order for the continuance of trial. Defendant's claim thus lacks record support.

{¶ 67} Next, defendant asserts that he was prejudiced because the trial court instructed the jury on an offense not charged in the indictment: possession of crack cocaine in an amount equal to or exceeding one gram but less than five grams, a felony of the fourth degree. See R.C. 2925.11(C)(4)(b). Defendant argues that he should have been tried solely on the offense charged in the indictment: possession of crack cocaine in an amount equal to or exceeding 25 grams but less than 100 grams, a felony of the first degree. Defendant's argument lacks merit.

{¶ 68} Where the evidence at trial would reasonably support both an acquittal on the crime charged in the indictment and a conviction upon a lesser included offense, a trial court must instruct the jury on the lesser included offense. See *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. At trial, defendant admitted having possession of the 4.8 grams of crack cocaine found in his pants pocket, but he denied having possession of the 22.8 grams of crack cocaine found on the ground. Based on defendant's testimony, the jury could have convicted him of the lesser included, fourth-degree drug-possession offense and acquitted him of the first-degree felony drug possession offense. The trial court thus committed no error, much less plain error prejudicing defendant's substantial rights, when the trial court instructed the jury on fourth-degree felony drug possession and the jury found him guilty of the original charge of first-degree felony drug possession. Id.

{¶ 69} Defendant next claims that the trial court and the prosecution improperly communicated with the jury during deliberations outside the presence of defendant and his counsel. Defendant maintains that "neither [defense] counsel nor appellant knows exactly what transpired in their absences when the jury made its request."

{¶ 70} "As a general rule, any communication between judge and jury that takes place outside the presence of the defendant or parties to a case is error which may warrant the ordering of a new trial." *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 149, 524 N.E.2d 881. "Such communications are required to be made in the presence of the defendant or parties so that they may have an opportunity to be heard or to object before the judge's reply is made to the jury." Id.

{¶ 71} Here, the record reflects that during deliberations and in the absence of the court reporter, the jury sent a note to the trial judge requesting one of the police reports and stating that the jury had a question regarding police procedure. The trial court notified the prosecution and defense counsel of the jury's communication and, with their agreement, sent the note back to the jury with the court's response: "You have received all the evidence that was admitted." Even if the trial court's communication with the jury outside of defendant's presence were error, defendant failed to demonstrate that he was prejudiced when not only did defense counsel agree with the trial court's response to the jury, but the court's communication was brief and nonsubstantive in nature. See *Bostic*, 37 Ohio St.3d at 149–150, 524 N.E.2d 881 (finding no prejudice where the trial court's ex parte communication with the jury was limited to a denial of the jury's request for written instructions); *State v. Abrams* (1974), 39 Ohio St.2d 53, 55–56, 68 O.O.2d 30, 313 N.E.2d 823 (the defendant's right to a fair trial was not prejudiced by a communication between the trial judge and the jury where the judge responded to the jurors' request for further instructions by telling them that the only further instruction he would give would be to reread his original charge, which the jury refused).

{¶ 72} Lastly, defendant claims that the trial court's instructions to the jury concerning witness credibility constituted plain, prejudicial error. Defendant argues that the trial court "inflamed" and "swayed" the jurors when it instructed them on "signs" for evaluating the credibility of witnesses. Crim.R 30(B) permits the trial court to provide the jury with instructions of law relating to credibility and weight of the evidence. The trial court committed no error, plain or otherwise, when it instructed the jury on witness credibility in compliance with the standard jury instructions on credibility. See 4 Ohio Jury Instructions (2007) 41, Section 405.20 (reorganized and now found in Ohio Jury Instructions (2008), CR Section 409.05). Defendant's claim is without merit.

{¶ 73} Because defendant failed to demonstrate that the trial court committed plain, prejudicial error denying him a fair and impartial trial, we overrule the third assignment of error presented in his supplemental appellate brief.

## X. Mandatory Fine Imposed Upon Defendant

{¶ 74} In the fourth assignment of error in his supplemental appellate brief, defendant contends that the trial court abused its discretion in imposing a

mandatory fine upon him in the amount of $10,000. Defendant claims that he is indigent and unable to pay the fine.

{¶ 75} In *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, a plurality opinion, the Supreme Court of Ohio established a two-step analysis of sentencing issues. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." Id. at ¶ 4. If the sentence is not clearly and convincingly contrary to law, the second step under *Kalish* is to review whether the trial court abused its discretion in imposing the sentence. Id.; *State v. Easley,* 10th Dist. No. 08AP–755, 2009-Ohio-2984, 2009 WL 1804087, ¶ 15. An abuse of discretion is " 'more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 76} Pursuant to R.C. 2929.18(A), a trial court that imposes a sentence upon a felony offender may sentence the offender to any financial sanction or combination of financial sanctions that the statute authorizes. While a trial court may conduct a hearing to determine an offender's ability to pay a fine, a hearing is not required. R.C. 2929.18(E); *State v. Conway,* 10th Dist. No. 03AP–1120, 2004-Ohio-5067, 2004 WL 2803418, ¶ 7. Nevertheless, before imposing a financial sanction under R.C. 2929.18, the trial court must consider the offender's present and future ability to pay the amount of the sanction or fine. R.C. 2929.19(B)(6); *State v. Brinkman,* 168 Ohio App.3d 245, 2006-Ohio-3868, 859 N.E.2d 595, ¶ 17. No express factors are set out that a court must consider or findings that a court must make when determining the offender's present and future ability to pay. *State v. Loving,* 180 Ohio App.3d 424, 2009-Ohio-15, 905 N.E.2d 1234, ¶ 9; *State v. Silverman,* 10th Dist. No. 05AP–837, 2006-Ohio-3826, 2006 WL 2075642, ¶ 144, affirmed sub nom *In re Criminal Sentencing Cases,* 116 Ohio St.3d 31, 2007-Ohio-5551, 876 N.E.2d 528. Rather, the record need reflect only that the court considered the offender's present and future ability to pay before it imposed a financial sanction on the offender. *Loving* at ¶ 9; *Brinkman* at ¶ 17; *State v. Finkes,* 10th Dist. No. 01AP–310, 2002-Ohio-1439, 2002 WL 464998.

{¶ 77} In this case, defendant was found guilty of possession of crack cocaine in violation of R.C. 2925.11, a first-degree felony. R.C. 2929.18(B)(1) provides that for an offender convicted of a first-degree felony under Chapter 2925, the sentencing court "shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount

authorized" for the offense.  R.C. 2929.18(A)(3)(a) authorizes a maximum fine in the amount of $20,000 for a felony of the first degree.  The trial court ordered defendant to pay a mandatory fine in the amount of $10,000, one-half of the maximum fine amount authorized by statute.  The record reflects that in sentencing defendant, the trial court considered his present and future ability to pay a fine and made no determination that he is unable to pay the mandatory fine that the statute authorizes.  To the contrary, after imposing the fine, the trial court remarked at the sentencing hearing that because defendant had "a tax refund floating around and there was $650 found on him, which is in the custody of the police department, why we'll get some of this fine back, so that's one reason I'm leaving the fine and costs in force in this thing."

{¶ 78} The record demonstrates that the $10,000 mandatory fine imposed on defendant is neither contrary to law nor an abuse of the trial court's discretion.  R.C. 2929.18(B)(1) requires a sentencing court to impose a mandatory fine upon an offender convicted of first-degree felony drug possession unless (1) the offender files an affidavit prior to sentencing that he or she is indigent and unable to pay the mandatory fine and (2) the trial court finds that the offender is an indigent person and is unable to pay the mandatory fine.  *State v. Gipson* (1998), 80 Ohio St.3d 626, 634, 687 N.E.2d 750.  The Supreme Court of Ohio determined that "the required filing of an affidavit of indigency for purposes of avoiding a mandatory fine is, in effect, a jurisdictional issue."  Id. at 633, 687 N.E.2d 750.  The court held that an offender's failure to file the statutorily required affidavit of indigency prior to sentencing "is, standing alone, a sufficient reason" to find that the trial court did not err in imposing a mandatory statutory fine.  Id.

{¶ 79} Prior to sentencing in this case, defendant filed an affidavit of indigency alleging that he was financially unable to retain private counsel to defend him in the matter; he did not file an affidavit alleging he was "indigent and unable to pay the mandatory fine."  Courts in Ohio have found " 'a difference between a defendant's inability to raise an initial retainer in order to obtain trial counsel and the ability to gradually pay an imposed mandatory fine over a period of time.' "  *State v. Burnett,* 10th Dist. No. 08AP–304, 2008-Ohio-5224, 2008 WL 4482670, ¶ 9, quoting *State v. Banks,* 6th Dist. No. WD–06–094, 2007-Ohio-5311, 2007 WL 2874357, ¶ 15, citing *State v. Young,* 5th Dist. No. 03–CAA–10051, 2004-Ohio-4002, 2004 WL 1717601, ¶ 16.  An offender's indigency for purposes of receiving appointed counsel is separate and distinct from his or her indigency for purposes of avoiding having to pay a mandatory fine.  See *Gipson,* 80 Ohio St.3d at 631–633, 687 N.E.2d 750.  See also *Burnett* at ¶ 9; *Banks*; *State v. Millender,* 5th Dist. No. 03–CA–78, 2004-Ohio-871, 2004 WL 362217, ¶ 8.  As a result, defendant "cannot rely on the affidavit of indigency for the purpose of receiving

appointed trial counsel to demonstrate indigency for the purpose of avoiding having to pay the mandatory fines after [his] conviction." *Banks* at ¶ 15. Because defendant did not file an affidavit of indigency alleging that he is "unable to pay the mandatory fine," the trial court was required to impose a fine on defendant of at least $10,000, one-half of the $20,000 authorized by statute. See R.C. 2929.18(A)(3) and (B)(1); *Gipson,* 80 Ohio St.3d at 633, 687 N.E.2d 750; *Burnett* at ¶ 9.

{¶ 80} In further rejecting defendant's challenge to the $10,000 fine, we note that he neither objected to the fine nor requested an opportunity to demonstrate to the trial court his inability to pay a financial sanction. "[T]he burden is upon the offender to affirmatively demonstrate that he or she is indigent and is *unable to pay* the mandatory fine." (Emphasis sic.) *Gipson,* 80 Ohio St.3d at 635, 687 N.E.2d 750. Because the record lacks evidence showing defendant's inability to pay the mandatory fine that the trial court imposed, defendant did not carry his burden to affirmatively demonstrate his inability to pay the mandatory fine. Id.

{¶ 81} The fourth assignment of error in defendant's supplemental brief on appeal is overruled.

## XI.  Conclusion

{¶ 82} Having overruled each of the assignments of error presented in this appeal, we affirm the trial court's judgment.

Judgment affirmed.

KLATT and CONNOR, JJ., concur.