[Cite as *State v. Saunders*, 2014-Ohio-1746.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


State of Ohio,                               :

      Plaintiff-Appellee,              :

                                               No. 13AP-668
v.                                           :      (C.P.C. No. 12CR-02-0636)

Joseph L. Saunders,                          :      (REGULAR CALENDAR)

      Defendant-Appellant.             :


D E C I S I O N

Rendered on April 24, 2014


*Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee.

*Clark Law Office*, and *Toki Michelle Clark*, for appellant.


APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1}  Defendant-appellant, Joseph L. Saunders, appeals from the judgment of the Franklin County Court of Common Pleas convicting him of possession of marijuana and trafficking in marijuana.  For the following reasons, we affirm the judgment of the trial court.

## I. BACKGROUND

{¶ 2}  Appellant was indicted on one count of possession of marijuana, a felony of the fifth degree, in violation of R.C. 2925.11, and one count of trafficking in marijuana, a felony of the fourth degree, in violation of R.C. 2925.02.  The indictment alleged that, on September 8, 2011, appellant did knowingly possess and intend to distribute or did distribute marijuana in an amount equal to or exceeding 200 grams, but less than 1,000

grams. Appellant pleaded not guilty to the charges, and the case proceeded to a jury trial. Therein, the following evidence was adduced from the case-in-chief of plaintiff-appellee, the State of Ohio.

{¶ 3} In September 2011, Officers Brett Bodell, Michael Batog, Megan Palumbo, and David LaRoche of the Columbus Division of Police were assigned to the Strategic Response Bureau ("SRB"). According to Bodell, the SRB works undercover to investigate narcotics, robberies, and murders. On September 8, 2011, at approximately 6:00 p.m., Bodell and the other officers were surveilling a Giant Eagle parking lot in response "to several narcotics complaints." (Tr. 23.) Bodell testified that drug transactions would take place "in broad daylight out in the public, but they try to blend in with people that are shopping while they do their drug deals in the parking lot." (Tr. 24.) According to Bodell, in his experience, "drug dealers and people buying drugs, they will park away from the store, with empty spots between them and the store." (Tr. 24.) Bodell stated SRB looks for individuals that park their vehicles deliberately away from the store, leaving empty spots between them and the store, and then wait until another car shows up.

{¶ 4} According to Bodell, at approximately 6:00 p.m., he "observed a silver Pontiac with two males aboard sitting out away from the store with empty spots between" and decided to set up surveillance on the vehicle. (Tr. 25.) Bodell testified that he next observed a white Yukon pull up beside the Pontiac. According to Bodell, the driver of the Yukon exited the vehicle and got into the back passenger seat of the Pontiac and closed the door. Bodell testified that, based upon his and the other officers' experience, there was a narcotics transaction taking place. Bodell stated the officers interceded by moving their undercover vehicle in front of the Pontiac. The officers exited their vehicle, identified themselves as police officers, and approached the vehicles.

{¶ 5} According to Bodell, as the officers approached, he observed the right front passenger of the Pontiac, later identified as appellant, "reaching down or like he was placing or retrieving an object in his feet area." (Tr. 26.) Bodell stated he smelled a strong odor of marijuana coming from the car and observed two bags in between appellant's feet, "where [appellant] had reached down in plain view." (Tr. 27.) According to Bodell, he later discovered one bag contained $16,943 in cash and the other bag, state's exhibit D, was a grocery bag containing a separate plastic bag of marijuana. Bodell next observed a

black bag in the rear passenger seat containing a plastic bag of marijuana, state's exhibit E. The black bag also contained empty plastic bags. Bodell testified he immediately removed exhibit E from the vehicle, placed it on the hood of the car, and informed his fellow officers he had found marijuana.

{¶ 6} Batog worked alongside Bodell on September 8, 2011. Batog testified that, as their undercover vehicle approached appellant's vehicle, he observed appellant make "a suspicious motion" where he "dipped down like he was putting something down by his feet." (Tr. 68.) Batog stated the officers exited their undercover vehicle, identified themselves as police officers, and approached the vehicle. According to Batog, upon approaching the Pontiac, he observed two bags between appellant's feet and smelled a strong odor of marijuana. Batog stated the bags contained marijuana and money, with exhibit D, the bag of marijuana, positioned on top of the bag of money. According to Batog, based on the positions of the bags, the first thing appellant would have touched when leaning down was exhibit D. Batog further testified that the marijuana and plastic bags discovered in the backseat of the Pontiac were within reaching distance of appellant.

{¶ 7} According to Palumbo, she observed the driver of the Yukon enter the rear passenger side seat of the Pontiac behind appellant. When specifically asked if the driver of the Yukon was carrying anything before entering the Pontiac, Palumbo stated she could see the individual, and he was not carrying anything. According to Palumbo, as soon as the officers' exited their vehicle, appellant "did a movement down." (Tr. 102.) Palumbo testified she searched the Yukon where she discovered a prescription pill bottle and a "[s]andwich bag of marijuana." (Tr. 105.) After the incident, Palumbo testified she completed a report with the aid of the other officers involved. On cross-examination, when specifically asked if she had any knowledge of how appellant acquired $16,943 in cash, Palumbo responded "I personally subpoenaed [appellant's] tax records through IRS, and I can tell you that he didn't file taxes from 2008 till then." (Tr. 114-15.) Palumbo further stated "[t]he state tax return told me that [appellant] didn't have any income coming in." (Tr. 116.) Thereafter, the state rested their case-in-chief, and the following evidence was adduced from appellant's case-in-chief.

{¶ 8} Called on cross-examination by appellant, LaRoche testified he was a "cover officer" remaining approximately 15 to 20 feet back from the other officers. (Tr. 130.)

LaRoche stated he was unable to see if crimes were being committed "until Officer Bodell yelled 'weed.' " (Tr. 131.) According to LaRoche, the street value of exhibits D and E is between $900 and $1,200 per bag. LaRoche testified the $16,943 was handed to him, and appellant stated " '[t]hat's my money. I sell cars.' " (Tr. 136.) On direct examination, when specifically asked if he had "any knowledge that [appellant] actually did sell cars," LaRoche responded "no." (Tr. 140.)

{¶ 9} Germaine King testified he was the driver of the Yukon on September 8, 2011. According to King, he was buying drugs from the driver of the Pontiac, a mutual friend that King referred to as "Jason." (Tr. 142.) King testified that the marijuana in the Pontiac belonged to Jason. King stated Jason was selling drugs that day, but admitted on cross-examination that he did not know whether appellant was selling drugs. King denied the pills recovered in the Yukon belonged to him, but admitted the marijuana discovered in the Yukon was his. King further admitted to a criminal history, including convictions for aggravated possession of drugs, having a weapon under disability, and attempted possession of cocaine.

{¶ 10} According to Jason Lockette, the driver of the Pontiac, appellant was in his vehicle for 10 to 15 minutes before the officers arrived. Lockette testified he was giving appellant a ride, and appellant entered the vehicle carrying the bag of money and nothing else. According to Lockette, he and appellant did not talk throughout their time in the car. Lockette stated he did not observe appellant sell, transport or package any drugs. On cross-examination, Lockette admitted to a criminal history, including convictions for theft, felony attempted failure to appear, breaking and entering, and carrying a concealed weapon. Thereafter, appellant rested his case-in-chief.

{¶ 11} During appellee's rebuttal, Palumbo testified that, at the time of the incident, King stated that both the pills and marijuana recovered in the Yukon were his. According to Palumbo, King claimed because he was under an indictment for other crimes, having "a little bit of weed and pills didn't matter because [King] had that indictment coming down." (Tr. 177-78.)

{¶ 12} The jury returned a verdict finding appellant guilty of both possession of marijuana and trafficking in marijuana. Appellant was sentenced, and this appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Appellant brings the following assignments of error for our review:

[I.] The verdict of guilty was not supported by legally sufficient evidence.

[II.] The conviction of appellant for possession and trafficking is against the manifest weight of the evidence.

## III. DISCUSSION

### A. First Assignment of Error

{¶ 14} In appellant's first assignment of error, he argues there was legally insufficient evidence produced at trial to sustain his convictions for possession of marijuana and trafficking in marijuana. Specifically, appellant contends there was insufficient evidence demonstrating that he possessed marijuana, as required by R.C. 2925.11, and that he knowingly trafficked in marijuana, as required by R.C. 2925.02.

{¶ 15} Before we reach the merits of appellant's assigned error, we first address appellee's argument that appellant has waived his sufficiency argument for purposes of appeal. According to appellee, appellant's failure to make a timely Crim.R. 29 motion waives all but plain-error review. We have previously addressed this issue in *State v. Smith*, 10th Dist. No. 08AP-736, 2009-Ohio-2166. In *Smith*, we concluded that the difference between a review for legal sufficiency and a review for plain error is "largely academic" and that, if the evidence is insufficient, regardless of whether we review for plain error, the conviction must be reversed. *Id.* at ¶ 25. Thus, in *Smith*, we declined to utilize the plain-error standard. Accordingly, as we did in *Smith,* here, we address appellant's insufficiency of the evidence argument without utilizing the plain-error standard.

{¶ 16} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36. In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine " 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Peters*, 10th

Dist. No. 13AP-748, 2014-Ohio-1071, ¶ 7, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 17} Appellant does not challenge that the substance recovered from the Pontiac was marijuana, nor does appellant challenge the amount of marijuana recovered. Appellant argues only that his mere proximity to marijuana does not constitute possession sufficient to satisfy R.C. 2925.11. R.C. 2925.11(A) provides, in relevant part, that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." Similarly, "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "[P]ossession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

{¶ 18} "Possession of a controlled substance may be actual or constructive." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 27 (10th Dist.). "A person has actual possession of an item when it is within his immediate physical control." *Id.* "Constructive possession exists when a person knowingly exercises dominion and control over an object, even though the object may not be within the person's immediate physical possession." *Id.* "[T]he surrounding facts and circumstances, including the defendant's actions, constitute evidence from which the trier of fact can infer whether the defendant had constructive possession over the subject drugs." *Id.* at ¶ 28, citing *State v. Stanley*, 10th Dist. No. 06AP-323, 2007-Ohio-2786, ¶ 31.

{¶ 19} Upon review, as testified to by Bodell, Batog, and Palumbo, exhibit D was discovered in between appellant's feet and positioned on top of $16,943 in cash that appellant claimed was his. Moreover, the officers testified prior to their intercession that appellant made a suspicious dipping movement towards his feet. Thereafter, when the officers reached the Pontiac, they discovered exhibit E in the backseat of the Pontiac, within reaching distance of appellant. Based on the above evidence, as viewed in a light most favorable to appellee, the evidence presented at trial was sufficient to support appellant's conviction for possession of marijuana in violation of R.C. 2925.11.

{¶ 20} Appellant next argues there was insufficient evidence to convict him of trafficking in marijuana in violation of R.C. 2925.03(A)(2).  R.C. 2925.03(A)(2) provides "[n]o person shall knowingly do any of the following: [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * * when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person."  "[N]umerous courts have determined that items such as plastic baggies, digital scales, and large sums of money are often used in drug trafficking and may constitute circumstantial evidence of conduct proscribed by R.C. 2925.03(A)(2)."  *State v. Forte*, 8th Dist. No. 99573, 2013-Ohio-5126, ¶ 10, citing *State v. Rutledge*, 6th Dist. No. L-12-1043, 2013-Ohio-1482, ¶ 15 (collecting cases); *State v. Kutsar*, 8th Dist. No. 89310, 2007-Ohio-6990, ¶ 20 (same). Circumstantial evidence has the same probative value as direct evidence.  *State v. Nicely*, 39 Ohio St.3d 147 (1988).  "[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990).

{¶ 21} Upon review, in addition to the evidence already discussed above, officers discovered several empty plastic baggies in the backseat of the Pontiac within reach of appellant.  Indeed, King admitted he entered the Pontiac in order to buy drugs.  Based on the above evidence as viewed in a light most favorable to appellee, the evidence presented at trial was sufficient to support appellant's conviction for trafficking in marijuana in violation of R.C. 2925.02.

{¶ 22} Accordingly, having concluded that the evidence presented at trial was sufficient to support appellant's convictions for possession of marijuana and trafficking in marijuana, appellant's first assignment of error is overruled.

**B.  Second Assignment of Error**

{¶ 23} In appellant's second assignment of error, he argues his convictions for possession of marijuana and trafficking in marijuana are against the manifest weight of the evidence.  Specifically, appellant argues because "there is no evidence of [appellant's] fingerprints being found on the marijuana containers," his conviction for possession of marijuana is against the manifest weight of the evidence.  (Appellant's brief, 9.)

{¶ 24} "[T]he criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and must determine whether in resolving the conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 25} As stated above, "[a] person has actual possession of an item when it is within his immediate physical control." *Pilgrim* at ¶ 27. Moreover, the absence of fingerprint evidence is not fatal to a conviction. *See State v. Rivera*, 10th Dist. No 10AP-945, 2012-Ohio-1915. Upon review, as previously discussed, the officers testified that they discovered exhibit D in between appellant's feet and exhibit E in the backseat of the Pontiac within reaching distance of appellant. Accordingly, we conclude that appellant's conviction for possession of marijuana was not against the manifest weight of the evidence.

{¶ 26} Appellant next argues that his conviction for trafficking in marijuana is against the manifest weight of the evidence. Specifically, appellant argues the evidence demonstrates he "was there because he needed a ride and Mr. Lockette was simply giving him a ride." (Appellant's brief, 9.) In conducting a manifest weight of the evidence review, "[t]he trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." *State v. Williams*, 10th Dist. No. 08AP-719, 2009-Ohio-3237, ¶ 16. Further, "[a] conviction is not against the manifest weight of the evidence merely because the jury believed the prosecution testimony." *State v. Jama*, 10th Dist. No. 13AP-19, 2013-Ohio-3796, ¶ 17.

{¶ 27} In light of the evidence already discussed above, we cannot conclude that the jury clearly lost its way in discounting Lockette's testimony in favor of the testimony and evidence presented by appellee. We conclude that appellant's conviction for trafficking in marijuana was not against the manifest weight of the evidence.

{¶ 28} Accordingly, having found appellant's convictions for possession of marijuana and trafficking in marijuana are not against the manifest weight of the evidence, appellant's second assignment of error is overruled.

## IV. CONCLUSION

{¶ 29} For the foregoing reasons, appellant's first and second assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

BROWN and DORRIAN, JJ., concur.

_____